**GUY A. SHEFFIELD,** as Administrator, v. **CORA WITTSTOCK BARRY,** by her husband, and next friend, George Barry.

14 So. (2nd) 417           June Term, 1943
June 11, 1943           · En Banc
Rehearing Denied July 22, 1943

*Baxter & Clayton,* for petitioner.

*Jordan, Lazonby & Dell,* and *Fielding & Duncan,* for respondent.

THOMAS, J.:

The principal question involved in this controversy is the right of the respondent, Cora Wittstock Barry, to benefit from the estate of Alexander Edward Wittstock and it is presented by petition for certiorari to review an order denying a motion to dismiss her amended bill of complaint. We will determine this matter first and then proceed to a discussion

of two allied questions, namely, the propriety of orders striking a paragraph of the answer and denying a motion for better particulars.

Plaintiff in the chancery court brought suit against the administrator of the estate and against Cora Wittstock, whom Alexander E. Wittstock had married shortly before his death. In order fully to understand the issues it is well to review the history of the relationship between the plaintiff on one hand and Alexander Edward Wittstock on the other, as it is detailed in the bill. In 1892, when the plaintiff was only three months of age, Sarah Wittstock requested that she and her husband be permitted to adopt the child as their own. The Wittstocks had no children and the mother was impecunious. Parenthetically, the identity of the father does not appear in the pleadings. In these circumstances, the "mother consented to permit the adoption" and the Wittstocks "promised and agreed with [the mother] . . . to adopt [the child] in consideration of the complete surrender by [the mother] to them." Relying upon this promise the mother delivered the child to the Wittstocks with the understanding that she was to be their child; that they would adopt her "as their own"; and that the mother was "forever to surrender any and all parental rights" or control over the infant. In furtherance of this agrement the Wittstocks took the plaintiff into their home and gave her the name of Cora Wittstock. She became a member of the family and was at all times a dutiful, loving and well behaved daughter, rendering to her foster parents the same service which one would give to natural parents. When she was sixteen years of age she married in the home of the Wittstocks in the presence of guests who received written invitations from them to attend the "marriage of their daughter Cora Mabel." The plaintiff was "treated and considered by her adoptive parents throughout their lives as their daughter and was by them represented to the community in which she lived as being [their] lawfully adopted daughter . . ." Also, throughout their lives she was told by them that she bore this status and she believed that the adoption had been legalized until shortly after the death of Alexander Edward Wittstock when she

learned that no proceedings had ever been instituted to that end.

In 1934 the adoptive mother died and in 1942 the father died intestate.

The plaintiff expressly alleged that the contract between her natural mother and her foster parents was fully performed by the former and by her. It was her prayer that the court decree specific performance and adjudge her entitled to such rights in the estate of Alexander Edward Wittstock, deceased, as she would have gained had the adoption been perfected in pursuance of the contract made in her infancy.

As a preliminary to the discussion of the controlling law we may observe that the amended bill of complaint was sufficient in its allegations to establish a valid contract between the foster parents and the natural mother and to show full performance by the latter and the child. According to the averments the foster parents partially performed the agreement, but failed in their promise to effectuate the adoption by statutory proceedings. There were in existence in 1892 (Sections 1536 et seq., The Revised Statutes of the State of Florida) and are now (Section 72.01, et seq., Florida Statutes 1941) laws governing adoption, so that, to quote the Section defining the effect of the final order of the court, an infant could be "declared the child and heir at law of the person applying for his adoption." This phraseology has remained unchanged for at least fifty years.

Besides the performance on the part of the natural mother and the child and the partial failure on the part of the foster parents, an important feature of the facts outlined in the bill of complaint is the intestacy of the foster father, for had he left a will this suit would be purposeless. It was the evident theory of the plaintiff that the court of chancery should invoke in her behalf the equitable maxim: equity regards that as done which ought to have been done. Frankly, at the inception of our consideration of this case we found little sympathy for the contention; however, as our study of the record and the authorities progressed we became more impressed with its soundness. The petitioners, who were defendants in the court below, have cited some authorities in

refutation of the doctrine as applied to the circumstances of this case, notably St. Vincent's Infant. Asylum v. Central Wisconsin Trust Co., 189 Wis. 483, 206 N.W. 921. The Supreme Court of Wisconsin held that the maxim was not pertinent to such a situation because adoption proceedings were wholly statutory, were unknown to the common law,— this status has been recognized by this court, In Re: Adoption of Carol Palmer, 129 Fla. 630, 176 So. 537, and, therefore, that equitable principles did not obtain. That suit was one "to establish an adoption" and it was decided that the court in chancery had no power to declare an adoption; no power to regard a statutory proceeding to have been taken when, in fact, it had not been.

We are convinced that this decision is at variance with other cases dealing with the same or similar facts because of the distinction—fine, nevertheless recognized by the authorities—between an action for specific performance to enforce the original contract thus placing the plaintiff in a position to profit from an intestate estate and specific performance to declare adoption effectual because legal proceedings to that end should have been instituted. To stress this distinction it is well to advert, for the moment, to the prayer of the bill,— not that she be declared the adopted child of Alexander Edward Wittstock, but that the court grant her specific performance of the contract made with her mother and fully performed by the mother and her. She asked that the court adjudge her "entitled to such rights in the Estate . . . as [she] would have had if her adoption had been legalized according to the requirements of the laws of Florida." Her right to participate in the estate of Alexander Edward Wittstock had its foundation in the contract, although it was incidental to the relationship which he became obligated to establish.

We have the view that this relief was justified and that the equitable maxim is appropriate to the condition reflected in the pleading. The facts in a case under consideration by the Supreme Court of Minnesota very closely resemble the ones under consideration, and that court held the relief grantable. Odenbreit v. Utheim, 131 Minn. 56, 154 N.W. 741,

L.R.A. 1916D 421. The decision is cited for the statement in 1 Am. Jur., Adoption of Children, page 629, that a contract providing for the adoption of a child gives the child property rights even though the adoption agreement contains no express provision in respect to those rights. It is also cited by the compilers of 2 C.J.S., Adoption of Children, page 400, for the proposition that a contract like the one here may be enforced by the child to secure a share in the estate of the foster parent who died intestate. The Supreme Court of New Mexico, Barney v. Hutchinson, 25 N. M. 82, 177 p. 890, applying the maxim which we have quoted, decided that the child would be entitled to relief despite the absence of special mention of property rights in the adoption contract. There is no need to prolong this opinion by adding citations of authorities which support the respondents' position because the reader may, by referring to the cases and compilations we have given, acquaint himself with the opinions of other courts on the subject.

If the plaintiff substantiates by evidence the allegations with reference to the execution of the contract, the performance on the part of the mother and herself, the partial performance by her foster parents and the intestacy of her foster father she should be awarded a decree.

There remain for determination the challenges to the court's order on the motions to strike a part of the answer and to require the plaintiff to furnish better particulars.

The attack was made against an entire paragraph, number two of the answer, the movant's objection to it having been that it did not sufficiently allege laches on the part of the plaintiff. By way of defense the pleader set out that the foster mother died in 1934, whereupon, the foster father filed a petition in the court of the county judge alleging that no children survived her. The county judge adjudicated this fact. It was charged that this order was not attacked by the plaintiff or by any one in her behalf, although she "has had notice of such petition and . . . order since its making and recordation; and the said order has become final and precludes the plaintiff from further maintaining this suit." We think that the chancellor was correct in his conclusion that

laches was not properly averred because the record discloses that the foster father in whose estate she now claims an interest died June 21, 1942, and that this suit was filed in October of the same year. For aught the record shows there was no occasion for her to have asserted any claim to participate in the foster mother's estate, even assuming that the representation by the father to the probate court had any binding effect on the plaintiff.

It does appear to us, however, that the motion to strike the entire paragraph of the answer was too broad because that portion of it not presenting laches was sufficient; therefore, the order should be revised to affect only the part of the pleading referring to that defense.

The only point presented by the motion for better particulars that seems necessary to be decided is the failure of the bill to allege whether the original contract was oral or written. The initial bill in the case alleged that it was written, while the amended bill contained no reference to its form. This seems inconsequential as an oral contract to adopt is enforcible, so far as it relates to the establishment of the relations of paternity and filiation, and is not affected by the Statute of Frauds in circumstances where, as here, the child was virtually, if not actually, adopted; that is, where there was performance on the one part and partial performance on the other. Crawford v. Wilson, 139 Ga. 654, 78 S.E. 30, 44 L.R.A. (N.S.) 773; Chehak v. Battles, 133 Iowa 107, 110 N.W. 330, 8 L.R.A. (N.S.) 1130, 12 Ann. Cas. 140. See also 2 C.J.S. Adoption of Children, page 398.

The petition for certiorari, so far as it relates to a review of the orders denying the motion to dismiss the bill of complaint and to furnish better particulars, is denied; the petition for certiorari to review the order granting the motion to strike paragraph two of the answer is granted and that order is quashed with instructions to revise it so as to delete from its effect the first sentence of paragraph two of the answer.

BUFORD, C. J., TERRELL and BROWN, JJ., concur.

CHAPMAN and ADAMS, JJ., dissent.

SEBRING, J., disqualified.