409 So.2d 201 (1982)
Mary Irene LANEY, Appellant,
v.
James Milton ROBERTS and Arthur S. Peacock, Jr., Co-Personal Representatives of the Estate of Mary Lou Phillips Merickel, Appellees.
No. 81-895.
District Court of Appeal of Florida, Third District.
February 2, 1982.
Quinton, Lummus, Dunwody & Adams and James D. Adams, Tampa, for appellant.
Brumer, Cohen, Logan & Kandell and Kenneth R. Duboff, Miami, Richard A. Crisonino, Orlando, for appellees.
Before SCHWARTZ, BASKIN and DANIEL S. PEARSON, JJ.
DANIEL S. PEARSON, Judge.
Mary Irene Laney (nee Mary Irene Phillips, and called Irene) was born in 1928. She was the third child of six children of Ira and Rebecca Phillips. In 1932, when Irene was four years old, the Phillipses were financially devastated by the depression *202 and sent their children to different relatives who were able to provide for the children. Irene was sent to live with her aunt and uncle, Mary and Jessie Merickel. At that time, the Phillipses and Merickels entered into an oral agreement under which the Merickels would adopt Irene. Irene's natural mother and the only surviving party to the agreement testified:
"Q. How long did you and Mr. Phillips care for her?
"A. Until she was four years old.
"Q. What happened at that time?
"A. Due to the depression, the Merickels, Mary and Jessie came to our house and wanted to adopt Irene.
"Q. Did you agree to that?
"A. Yes.
"Q. Did Mr. Phillips agree to that?
"A. Yes.
... .
"Q. Why did you agree to that?
"A. Due to the depression, and I had four children, and it was hard to live out there, we thought that it was the right thing to do for her sake.
"Q. Did you have an agreement with Mr. and Mrs. Merickel at that time?
"A. Yes, we did.
"Q. What was your agreement with them?
"A. To adopt her and raise her as their own daughter, to the best of their ability, educate her.
... .
"Q. Was this agreement a written agreement or an oral agreement?
"A. Oral."
From that time forward, until Irene's marriage in 1946, Irene resided continually with the Merickels, and the Merickels raised and provided for Irene. Irene's natural parents did not provide for Irene in any way after she began living with the Merickels. Indeed, the next communication between Irene and her natural parents was in 1948 when Irene was twenty, had been married two years, and had already given birth to a child. The Phillipses had known nothing of these events.
During her years with the Merickels, at school and in the community, Irene used the name Irene Merickel. Her childhood friends knew that Irene resided with the Merickels, referred to them as "mother and dad," was a loving daughter to the Merickels, and, in the community at large, the Merickels were considered to be Irene's parents. When Irene was married, the wedding invitation announced the marriage of the Merickels' "daughter Mary Irene."
Jessie Merickel died intestate in early 1979. Mary Lou Merickel survived her husband by several months and died intestate later that same year. Irene brought an action against Roberts and Peacock, the co-personal representatives of Mrs. Merickel's estate. Her action was based on the widely recognized theory of virtual adoption.[1] Annot., 97 A.L.R.3d 347 (1980). Such an action seeks the specific performance of an agreement to adopt after the death, intestate, of the last surviving putative foster parent, when, paradoxically, the agreement can no longer be specifically performed. But what can be enforced by such an action is the establishment of filiation where the child can be shown to have been virtually adopted.[2]Sheffield v. Barry, 153 Fla. 144, 14 So.2d 417 (1943). The action is:

*203 "... invoked to avoid an unfair result from the application of intestacy statutes. Its underlying theories are drawn from the realm of contract law and the relevant elements include some showing of an agreement between the natural and adoptive parents, performance by the natural parents of the child in giving up custody, performance by the child by living in the home of the adoptive parents, partial performance by the foster parents in taking the child into the home and treating her as their child, and, finally, the intestacy of the foster parent." Habecker v. Young, 474 F.2d 1229, 1230 (5th Cir. 1973) (applying Florida law).
And see Roberts v. Caughell, 65 So.2d 547 (Fla. 1953); Sheffield v. Barry, supra. The trial court entered judgment in favor of the defendants. Irene Laney appeals, and we reverse.
In the present case, every element of the action  the agreement to adopt; the surrender of custody by Irene's natural parents; the performance by Irene in living throughout her childhood in the home of the Merickels; the partial performance by the Merickels in taking Irene into the home and treating her as their child; and the intestacy of Mrs. Merickel  was clearly and convincingly established by Irene.[3] The defendants' argument that this overwhelming evidence is eroded by a single instance when Irene was legally required (ironically, because not formally adopted) to sign her marriage application in the name given her at birth is ludicrous. Such paltry evidence is legally insufficient to overcome her claim to virtual adoption. See In re Estate of Lamfrom, 90 Ariz. 363, 368 P.2d 318 (1962). And, even if, arguendo, the relationship between Irene and the Merickels was distant  even non-existent  after 1963 when Irene was thirty-five, such a fact does not serve to defeat Irene's claim, long since vested by virtue of the actions of the Merickels and Irene during Irene's childhood. The performance required by the child is satisfied by living in the home of the adoptive parents, not by being an ideal child forever, or even during childhood. Lastly, despite the defendants' contrary suggestions, there is absolutely no evidentiary value in the fact that Irene knew she was not formally adopted (which fact, by definition, is the gist of this lawsuit) or was unaware of the agreement (to which she was not a party) between her natural parents and the Merickels until Mrs. Merickel died.
Accordingly, we reverse the judgment below with directions to enter judgment for the plaintiff.
Reversed and remanded, with directions.
NOTES
[1] This theory, sometimes referred to as "equitable adoption" or "adoption by estoppel," while authorizing a claim for an intestate share of the adoptive parent's estate, has been held not to authorize a claim by a virtually adopted child under the Florida Wrongful Death Act. Grant v. Sedco Corporation, 364 So.2d 774 (Fla.2d DCA 1978).
[2] It is no impediment to the action that the agreement to adopt be oral, since if, arguendo, such an agreement is within the statute of frauds, the very proof required to establish entitlement to relief, performance by the child and partial performance (that is, all the indicia of adoption without formal adoption) by the "adoptive" parents, would take the agreement out of the statute. Roberts v. Caughell, 65 So.2d 547 (Fla. 1953).
[3] The plaintiff need only prove the elements of virtual adoption by a preponderance of the evidence. Roberts v. Caughell, supra; Moran v. Adler, 570 S.W.2d 883 (Tex. 1978). Contra, In re Estate of Lamfrom, 90 Ariz. 363, 368 P.2d 318 (1962) (burden to prove by clear and convincing evidence).