625 So.2d 1253 (1993)
George URICK, Appellant,
v.
Lois McFarland and Shirley Bartolin, as Co-Personal Representatives of the Estate of Gans Litman, Deceased, Appellees.
No. 92-03962.
District Court of Appeal of Florida, Second District.
September 17, 1993.
Rehearing Denied October 19, 1993.
Rehearing, Rehearing and Certification Denied November 12, 1993.
E. David Johnson of Law Offices of E. David Johnson, Punta Gorda, for appellant.
Stephen Deh Schwarz and J. Jeffrey Dalrymple of Olmsted, Schwarz & Kahle, P.A., Port Charlotte, for appellees.
Rehearing en banc, Rehearing and Certification Denied November 12, 1993.
ALTENBERND, Judge.
George Urick appeals a final judgment in favor of the co-personal representatives of the estate of Gans Litman. The probate court ruled that Mr. Urick was not entitled under the doctrine of virtual adoption to an intestate share of Gans Litman's estate. Although the result seems unfortunate in this case, we affirm. In an age where the traditional family structure is less prevalent because of divorce and other social forces, this case emphasizes the need for a written will to assure that a decedent's wishes are fulfilled.
George Urick was born in 1939 to Peter and Melvie Mae Urick. When he was three, his parents divorced and he continued to live with his father. His father died when Mr. Urick was fifteen. At that point, he went to live with his mother and her new husband, Gans Litman. Mr. Litman never adopted Mr. Urick.
From our record, it appears that Mr. Urick accepted Gans Litman as his "dad," and Mr. Litman treated Mr. Urick like a son. *1254 The record is replete with photographs taken over many years, depicting a typical father/son relationship. For Christmas in 1956, Mr. Urick received a bible from "Mother and Dad." When Mr. Urick married in 1961, all of the usual announcements described Gans Litman as his father. Mr. Urick's children called Mr. Litman "grandpa." When Mr. Litman became elderly, Mr. Urick seems to have fulfilled the responsibilities that usually befall a son or daughter.
Neither Mr. Urick's mother nor Mr. Litman prepared a will. Mr. Urick's mother died intestate in October 1990. Mr. Litman died intestate two months later at age ninety-one. Mr. Litman apparently received the majority of his wife's property through intestacy or joint ownership. See § 732.102, Fla. Stat. (1989). Unless Mr. Urick is regarded as a lineal descendant of Mr. Litman, he is not entitled to a share of Mr. Litman's estate, and the estate will pass to Mr. Litman's collateral heirs. § 732.103(1), Fla. Stat. (1989). It is noteworthy that, if the order of death had been reversed, the rules of intestacy would have resulted in Mr. Urick being the primary beneficiary of his mother's estate, and he would have received the bulk of the assets now in Mr. Litman's estate.
Mr. Urick argues that he established a claim under the equitable doctrine of virtual adoption. See Sheffield v. Barry, 153 Fla. 144, 14 So.2d 417 (1943); Roberts v. Caughell, 65 So.2d 547 (Fla. 1953); In re Heirs of Hodge, 470 So.2d 740 (Fla. 5th DCA 1985); Laney v. Roberts, 409 So.2d 201 (Fla. 3d DCA 1982); Miller v. Paczier, 591 So.2d 321 (Fla. 3d DCA 1991). The doctrine of virtual adoption is not recognized by the Florida Probate Code, but has been judicially created to assure that an agreement to adopt may be enforced against the estate of an "adoptive" parent who fails to legally adopt the child. The doctrine is in the nature of promissory estoppel or breach of an oral contract to adopt. It is not intended to fulfill what the judiciary may perceive to be the wishes of the decedent, but rather to protect the contractual rights of the surviving child. Cf. Grant v. Sedco Corp., 364 So.2d 774 (Fla. 2d DCA 1978) (virtual adoption permits enforcement of contractual rights, but does not establish a relationship of parent and child under the Wrongful Death Act). Mr. Urick's claim failed at trial because he was unable to prove an agreement for his adoption between Mr. Litman and his natural parents. Although he proved all remaining elements of this doctrine, without proof of the agreement he cannot prevail.
As recently as 1985, the doctrine of virtual adoption was described as a "rarity." In re Hodge, 470 So.2d at 741. As family structure becomes less traditional, it is likely that the time-honored rules of intestacy will frequently fail to accommodate a decedent's true testamentary intent. It is possible that section 732.103 could be amended to grant an intestate share to stepchildren of long-term marriages even when those children have not been legally adopted. This, however, is a legislative function and not one for the judiciary. In the meantime, the members of such families would be well-advised to prepare wills.
SCHOONOVER, A.C.J., and BLUE, J., concur.