Gladys Ray CRAWFORD, Individually and as Mother and next friend of Brandi Crawford, a minor, and in her capacity as Administratrix of the Estate of William Crawford, Plaintiff,

v.

COOPER/T. SMITH STEVEDORING COMPANY, INC., Hawco Manufacturing Co., Stateline Scrap Co., Inc., River Consulting, Inc., International Longshoremen's Association Local 1329, John J. Orr & Son, Inc., Upper City Electric Company, and Harbour & Port Contractors, Inc., Defendants.

COOPER/T. SMITH STEVEDORING CO., INC., and River Consulting, Inc., Third–Party Plaintiffs

v.

JOHN J. ORR & SONS, INC., Upper City Electric Company, Harbour & Port Contractors, Inc., London and Hull Maritime Insurance Co., Ltd. and AXA Global Risk (UK) Ltd., Third–Party Defendants.

LONDON AND HULL MARITIME INSURANCE CO., LTD., and AXA Global Risk (UK) Ltd., Fourth–Party Plaintiffs,

v.

ST. PAUL FIRE & MARINE INSURANCE, CO., and American Home Assurance Company, Fourth–Party Defendants

No. 91–0154L.

United States District Court, D. Rhode Island.

July 20, 1998.

Donald A. Woodbine, Pearlman & Vogel, Providence, Michael J. Samanie, Herbert W. Barnes, David B. Allen, Samanie, Barnes & Allen, Hauma, LA, for Plaintiffs.

Howard E. Walker, Hinckley, Allen & Snyder, Providence, RI, for Defendant Cooper/T. Smith.

Raymond A. LaFazia, Gunning LaFazia & Gnys, Providence, RI, for Defendant Hawco Manufacturing.

Paul V. Reynolds, Boyer, Reynolds & DeMarco, Providence, RI, for Defendant State Line Scrap.

Peter J. Comerford, Nadeau Gavin & Simmons P.C., Providence, RI, for Defendant John J. Orr & Sons, Inc.

John W. Kershaw, Rice Dolan & Kershaw, Providence, RI, for Defendant Upper City Electric.

Howard A. Merten, Vetter & White, Inc., Providence, Brendan J. Malley, Mendes & Mount, New York, NY, for Defendant AXA Global Risks, f/k/a London and Hull Ins. Co.

C. Russell Bengtson, Carroll, Kelly & Murphy, Providence, Thomas E. Loehn, Boggs, Loehn & Rodriquez, New Orleans, LA, for Defendant River Consulting and St. Paul Fire Ins.

Richard P. McMahon, McMahon & McMahon, Providence, John M. Woods, Gerald J. Ferguson, William S. Presti, Thacher, Proffit & Wood, New York, NY, for Harbour & Port.

A. Lauriston Parks, Hanson Curran Parks & Whitman, Providence, RI, John T. Lillis, Jr., Kennedy Lillis Schmidt & English, New York, NY, for Defendant American Home Assurance.

## MEMORANDUM AND ORDER

LAGUEUX, Chief Judge.

This matter is before the Court on three outstanding motions relating to the underlying wrongful death claim brought by Gladys Ray Crawford, a resident of Mississippi, ("plaintiff") on behalf of herself and Brandi Crawford, her minor child, for the death of her husband, William Crawford against Cooper/T.Smith Stevedoring Co., Inc., a Louisiana corporation, ("Cooper/T.Smith"), Hawco Manufacturing Co., of Lousiana, ("Hawco"), Stateline Scrap Co., of Massachusetts, ("Stateline"), River Consulting, Inc., of Lousiana, ("River"), International Longshoremen's Association Local 1329 of Rhode Island ("ILA"), John J. Orr & Son, Inc. of Rhode Island ("Orr"), Upper City Electric Company, of Louisiana ("Upper City"), and Harbour and Port Contractors, Inc., of Lousiana ("Harbour & Port"). Plaintiff's claims are contained in a Third Amended Complaint. A number of crossclaims, counterclaims, third party claims and fourth party claims have also been filed in the case.

The first motion is defendant Hawco's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Defendant, Harbour & Port, (also a third party defendant) has made a motion to dismiss plaintiff's direct claim against it pursuant Rule 12(b)(6) alleging that said claim is barred by the statute of limitations. Finally, third party defendant and fourth party plaintiff AXA Global Risk (UK) Ltd., ("AXA") has

moved for summary judgment on its claim against Harbour & Port for a declaratory judgment that it has no obligation to defend or indemnify Harbour & Port in this case.

In her multi-count complaint, plaintiff asserts a number of legal theories of recovery for the wrongful death of her husband against the named defendants. In Count I of the Complaint plaintiff alleges that Hawco, as one of a number of defendants, negligently maintained, constructed, designed, repaired, operated and/or controlled the crane, the spreader bar and the grapple which caused William Crawford to fall to his death. In Count II, plaintiff avers that Hawco, as one of a number of defendants, is strictly liable for William Crawford's death because it supplied an unsafe product (the grapple) which was likely to cause injury to users. In Count III, plaintiff asserts that Hawco, among others, violated the rulings of the United States Department of Occupational Safety and Hazards ("OSHA") and as a result, William Crawford was injured and killed. In Count IV plaintiff makes a claim for loss of consortium on her own behalf and on behalf of Brandi Crawford arising out of the wrongful death of William Crawford. In Count V plaintiff avers a negligent hiring claim against Cooper /T. Smith, Orr and/or the I.L.A. Count V is not implicated in the pending motions. In Count VI plaintiff asserts a negligence claim against Harbour & Port, William Crawford's employer because of its failure to make payment of compensation benefits to plaintiff under the Longshore and Harbor Worker's Compensation Act, 33 U.S.C. § 905(a) ("LHWCA"). The only other claim relevant at this time is the cross-claim brought by AXA against Harbour & Port asserting that there was no insurance coverage under its policy for any potential claims against Harbour and Port arising from the Crawford incident. For the reasons which follow, Hawco's motion for summary judgment is granted with respect to Count III but denied with respect to Counts I, II, and IV. Harbour & Port's motion to dismiss is granted because plaintiff's claim against it is barred by the statute of limitations. The dismissal of that claim causes AXA's crossclaim against Harbour & Port to become moot.

## I. Background

This case arises out of an incident that occurred more than ten years ago. In 1987, two Gantry cranes were located in the Port of Providence. A Gantry crane is a hoistering device which moves on tracks on a bridge-like frame. At that time, both cranes were equipped as container cranes and were not operable. This suit involves one of those cranes known as the "south crane."

Cooper/T. Smith, based in Louisiana, conducts stevedoring operations in a number of ports of the United States. In 1988 or 1989, David Bourke, a principal of Stateline, contacted David Wilkins, senior vice-president of Cooper/T. Smith to express an interest in having Cooper/T. Smith extend its operations to the Port of Providence to help Stateline export scrap from this location. The original intent was to repair the north crane so that it could be used to load scrap material onto ocean-going vessels. Wilkins then contacted Dixon Betz at River to study the feasibility of converting the north crane.

The north crane was subsequently damaged after being hit by a vessel and the parties decided to focus on converting the south crane instead. River advised Cooper/T. Smith that the conversion of the south crane was feasible and submitted an estimated budget for repair and modification. River was then hired by Cooper/T. Smith to oversee the refurbishing of the south crane including the purchase of necessary materials. Wilkins understood that River would provide engineering and construction management services for the project. Harbour & Port was hired by River to repair the structural damage to the crane. William Crawford was a foreman for Harbour & Port and was working on the crane project in Providence at the time in question.

To convert the Gantry crane to a scrap loading crane, a grapple would have to be acquired which would be used to pick up scrap from the dock and load it onto the ship. The grapple is attached by chains to a spreader bar, which contains a diesel engine and a generator. The engine powers the generator which supplies electric power to a motor in the head of the grapple via an

umbilical cord. That motor is the power source for a hydraulic pump which pressurizes the hydraulic fluid. The fluid pressurizes cylinders which in turn open and close the eight (8) tines of the grapple. The end result is that the crane can pick up scrap on the ground, trolley that scrap over the hold of the ship, and then release it into the hold of the vessel.

Cooper/T. Smith contacted several firms to arrange for the construction of a 20 cubic yard grapple. Hawco was awarded the contract and on September 7, 1989, an order was placed for the purchase of a 20 cubic yard, 8 tine electro-hydraulic scrap grapple weighing 28,000 pounds with a 125 horse power motor for $129,000.00. This grapple would be the largest grapple ever built.

After it was repaired and modified, the crane, with grapple, was run by an operator located in a cab high above the ground which contained the control switches for the crane's operation. In order to trolley the spreader bar/ grapple back and forth, the operator had to move the appropriate toggle switch in the desired direction with his hand. Another toggle switch controlled the crane's hoist mechanism which raised and lowered the spreader bar/grapple. A third toggle switch was used to control the opening and closing of the tines of the grapple. To open or close the grapple, the operator pushed the switch in the appropriate direction but was required to maintain hand pressure on that switch until the opening or closing cycle was completed. Once the operator removed his hand from the switch, it returned to the neutral position, shutting off hydraulic pressure from the pump to the cylinders on the grapple tines.

Later in 1989, the grapple was sent to Cooper/T. Smith's facility in Darrow, Louisiana until the south crane in Providence was ready for use. A telemetry system was installed to convey the crane operator's requirements to the spreader bar. Upper City completed the work called for on the crane when the spreader bar arrived in Providence. Upper City was asked to do the necessary work on the spreader bar—installing the umbilical cord and the electrical control switches—in addition to its original contract work. The spreader bar was not constructed by Hawco. Similarly, the generator set and controls were mounted on the spreader bar and the spreader bar was made operational by parties other than Hawco.

During testing of the crane, prior to the accident, problems were encountered with the grapple dropping scrap after the load had been picked up and was being trolleyed toward the ship. E.J. Lintinger, from Upper City, determined the cause of the problem to be a bleed off of hydraulic pressure to the cylinders causing the tines to open slowly as the grapple was being hoisted from the scrap pile toward the ship. This would occur when the crane operator released the grapple control switch. Lintinger contacted Hawco to inquire as to whether pilot controlled check valves had been installed in the grapple's hydraulic system and was told that they had not. Plaintiff claims such valves would have eliminated the scrap dropping problem by maintaining the pressure to the cylinders after the switch was released and it was self-neutralized.

To solve the problem, Upper City installed a detent switch, which remains in the position the operator places it until it is manually moved to another position. This detent switch had three positions: one which would apply hydraulic pressure to the cylinders to open the grapple, a neutral position which supplied no hydraulic pressure and a third position to supply hydraulic pressure to close the grapple. With this new detent switch, the crane operator could leave the switch in the closed position while hoisting and moving the scrap filled grapple from the scrap pile to the ship.

On February 6, 1991, the refurbished crane was in place in Providence and ready for its first loading of scrap onto the vessel "Star Conopus." Wilkins, representatives from Harbour & Port, the president of Stateline, engineers from River, and others, were present. Work had begun at approximately 7:00 am that day. About mid-morning, the radiator hose on the diesel engine ruptured. This caused the engine to loose its coolant and overheat which resulted in the automatic shut down of the generator and the loss of the electric supply to the grapple. The main

engine on the crane was still operative, however. At the time of the malfunction, the grapple was over the hold of the ship. The crane operator trolleyed the grapple, which was partially open, to the dock and lowered it onto the dock. He aligned the top of the spreader bar with a 15 foot high wooden platform on the legs of the main structure of the crane so that Cooper/T. Smith's electrician and maintenance man, James Barnett ("Barnett"), could climb up the side of the crane and cross over onto the spreader bar to fix the broken radiator hose. Barnett was accompanied by William Crawford, the foreman for Harbour & Port. After the radiator hose was repaired, the generator was started up from the spreader bar. The control switch for the grapple had been inadvertently left in the closed position, so as the power was restored, the grapple began to close. Almost immediately, the spreader bar shook so that the distance between the spreader bar and the platform on the crane increased. Barnett was able to grab onto a cable. Crawford, however, either attempted to jump or fell from the spreader bar to the crane platform and ended up on the concrete dock below. On March 2, 1991, he died as a result of injuries sustained in the fall.

Gladys Crawford was the wife of William Crawford. She brought this action against Cooper/T. Smith and others for his wrongful death on behalf of herself and Brandi Crawford, a minor. Brandi Crawford is the natural born granddaughter of Gladys and William Crawford. Brandi was born on March 16, 1982 to Lisa Jo Crawford, daughter of decedent. After giving birth, Lisa Jo lived with her parents for approximately two months. When she left her parents' home to move back into her husband's house, she left Brandi to live with Gladys and William. Brandi has seen her natural father on only one occasion and although she has seen her natural mother more frequently, she has been told that Lisa Jo is her sister rather than her mother.

The Crawfords claimed Brandi as a dependant on their income tax returns since the year of her birth. She was registered in school as Brandi Crawford and was disciplined and provided for by the Crawfords.

On July 26, 1991, Gladys Crawford petitioned to adopted Brandi. The natural parents waived their rights and consented to the adoption, which was approved on August 1, 1991.

The complaint in this case has been amended twice, adding and dropping parties, and third and fourth party complaints have also been filed. Subsequent to the accident, and before this case was filed, plaintiff applied for workers' compensation benefits from Harbour & Port in Louisiana under the LHWCA, 33 U.S.C. § 905(a). The Administrative Law Judge (ALJ) who heard the case found that Harbour & Port's workers' compensation insurance with Hartford Insurance Company expired literally hours before William Crawford's accident and that coverage with a new carrier, Wausau Insurance Co. did not take effect until sometime after the accident. Thus the ALJ ruled that Harbour & Port did not have workers' compensation insurance in effect at the time of the accident. It was stipulated in that proceeding that William Crawford's injuries occurred during the course and scope of his employment with Harbour & Port and that there existed an employer-employee relationship at the time of the accident. The ALJ held that Harbour & Port was primarily liable to pay the compensation benefits to plaintiff and that River was secondarily liable as William Crawford's "general employer." Harbour & Port did not have the financial ability to make payment, therefore, River paid the compensation benefits to plaintiff, thus stepping into the shoes of the employer, Harbour & Port. This case was held in abeyance pending the outcome of those proceedings. Even before the decision of the ALJ became final, River moved for summary judgment in this case, but this Court waited for finality to set in. Later, plaintiff was granted leave to serve a Third Amended Complaint naming Harbour & Port as a direct defendant. Harbour & Port had lost its immunity from direct suit by an employee by failing to have workers' compensation insurance in effect on the accident date and then failing to make the benefit payments. The insurance underwriters, AXA, then came into the case and asserted a crossclaim against Harbour & Port for a declaratory judgment to the effect

that it provided no insurance coverage for the direct negligence claims made against Harbour & Port by plaintiff.

After the ALJ's decision became final, River's motion for summary judgment was granted from the bench since it took the place of William Crawford's employer and, thus, acquired immunity from suit. The Court then heard arguments on Hawco's motion for summary judgment, Harbour & Port's motion to dismiss, and AXA's motion for summary judgment on the portion of its crossclaim which relates to the requested declaratory judgment. Those matters were taken under advisement. They are now ready for decision.

## II. Standard of Review

Hawco and AXA have both brought summary judgment motions pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, which sets forth the standard for ruling on such motions:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Therefore, the critical inquiry is whether a genuine issue of material fact exists. "Material facts are those 'that might affect the outcome of the suit under the governing law.'" *Morrissey v. Boston Five Cents Sav. Bank*, 54 F.3d 27,31 (1st Cir.1995)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "A dispute as to a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the non moving party.'" *Id.*

On a motion for summary judgment, the court must view all evidence and related inferences in the light most favorable to the nonmoving party. *Continental Casualty Co.*

*v. Canadian Universal Ins. Co.*, 924 F.2d 370, 373 (1st Cir.1991). At the summary judgment stage, there is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, no room for the judge to superimpose his own ideas of probability and likelihood." *Greenburg v. Puerto Rico Maritime Shipping Auth.*, 835 F.2d 932, 936 (1st Cir.1987). Similarly, "[s]ummary judgment is not appropriate merely because the facts offered by the moving party seem most plausible, or because the opponent is unlikely to prevail at trial." *Gannon v. Narragansett Elec. Co.*, 777 F.Supp. 167, 169 (D.R.I.1991).

Harbour & Port has moved for dismissal of plaintiff's claim against it pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. In ruling on a motion to dismiss, the court must construe the complaint in the light most favorable to plaintiff, taking all well-pleaded allegations as true and giving plaintiff the benefit of all reasonable inferences. *See Negron–Gaztambide v. Hernandez–Torres*, 35 F.3d 25, 27 (1st Cir.1994), *cert. denied*, 513 U.S. 1149, 115 S.Ct. 1098, 130 L.Ed.2d 1066 (1995). Dismissal under Rule 12(b)(6) is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also* 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed.1990).

## III. Discussion

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, commonly known as "diversity jurisdiction," which requires the parties to be citizens of different states and the amount in controversy to be at least $75,000.00 [1]. This suit was brought under the Rhode Island Wrongful Death Act, R.I. Gen. Laws § 10–7–1 et seq., thus, the

---

1. At the time this case was filed, the amount in controversy requirement under 28 U.S.C. § 1332 was $50,000.00. Later, the amount required was amended to $75,000.00. As the case was filed before the amendment took effect, the jurisdictional amount required in this case is $50,000.00, but that is of no moment in this case because plaintiff seeks to recover far more than $75,-000.00.

parties have assumed in their briefs and arguments that Rhode Island law will apply to this dispute. Therefore, no choice of law analysis is necessary.

### A. Hawco's Motion For Summary Judgment

Defendant Hawco has moved for summary judgment on all counts in which it is named (Counts I through IV). Count I asserts a negligence claim against it for the manner in which it "maintained, constructed, designed, repaired, operated and/or controlled the crane, the spreader bar and the grapple" which caused William Crawford to be injured and killed. Hawco denies it was negligent in designing and building the grapple sold to Cooper/T. Smith. Count II is a strict products liability claim asserted against Hawco for supplying an unsafe product which was likely to injure users. Hawco claims that there is no evidence to support a strict products liability action against it since it did not supply an unsafe product. Count III is a claim for breach of OSHA rulings and safety standards. Hawco claims that Count III does not apply to it and summary judgment should be granted in its favor. Hawco further contends that it is entitled to judgment as a matter of law as to the claim of Brandi Crawford contained in Count IV, because she was neither a biological or adopted child of William Crawford at the time of his death. Plaintiff argues that the doctrine of equitable adoption should apply and thus Brandi's claim should not be dismissed.

### 1. Count I—Negligence

Count I contains plaintiff's claim that Hawco was negligent in maintaining, constructing, designing, repairing, operating and/or controlling the crane, spreader bar and the grapple which caused the accident in question. Plaintiff's memorandum provides a more specific description of the manner in which she believes Hawco was negligent:

1. Failure to install pilot controlled check valves at the initial construction of the grapple.
2. Failure to retrofit the grapple with pilot controlled check valves after E.J. Lintinger contacted Hawco and informed them that the grapple was dropping scrap due to hydraulic pressure bleed off.
3. Failure to insist that the grapple control switch be of the self-centering type.
4. Failing to give adequate warnings and/or instructions that when the grapple was placed upon the ground, an air gap should be maintained between the top of the grapple and the bottom of the spreader bar greater than the difference between the closed and open height of the grapple, so that if the grapple is inadvertently closed it would not strike the bottom of the spreader bar, or to perform maintenance on the spreader bar only with the grapple off the ground.
5. Failing to insist upon and/or recommend the installation of hand railing and/or anchor points for safety belts upon the spreader bar when it knew, because of its superior knowledge, that i[t] was highly likely and foreseeable that individuals would be working upon the spreader bar while the grapple was placed on the ground.

Hawco not only denies plaintiff's allegations and argues that it was not negligent with respect to the manufacture of the grapple but also claims that no action or non-action on its part was a proximate cause of the accident.

■ To defeat Hawco's summary judgment motion as to Count I, plaintiff must show "sufficient facts to satisfy the necessary elements of his [or her] negligence claim." *Russian v. Life–Cap Tire Services, Inc.*, 608 A.2d 1145, 1147 (R.I.1992). Plaintiff must provide evidence which identifies Hawco's negligence as the proximate cause of the injury or from which a reasonable inference of proximate cause may be drawn. *Id.* The elements of a negligence action are well established in Rhode Island. To succeed on such a claim, plaintiff must show that (a) defendant owed decedent a legal duty to refrain from negligent behavior; (b) Hawco breached that duty; (c) the breach proximately caused the accident and decedent's injury; and (d) there was actual loss or damage resulting. *See Splendorio v. Bilray Demolition Co., Inc.*, 682 A.2d 461, 466 (R.I. 1996); *Jenard v. Halpin*, 567 A.2d 368, 370

(R.I.1989). Clearly, in a wrongful death case, the fourth element is satisfied.

While plaintiff's memorandum in support of her opposition to Hawco's motion for summary judgment cannot be described as a model of clarity, a fair reading of it suggests that Hawco's negligence essentially was in its design and manufacture of the grapple and in its failure to provide warnings or instructions to a user since Hawco had superior knowledge as to the proper and safe use of the grapple. Based on these allegations, the Court can assume that if plaintiff had chosen to name the legal theories under which she was proceeding, she would have asserted a negligent design and manufacturing claim and a failure to warn claim.

■ The question of whether Hawco owed a duty to decedent is a matter of law, not fact, and must be resolved by the Court. "The legal duty that is the predicate for the ... negligent manufacturing claim is the general duty of every manufacturer to use due care to avoid foreseeable dangers in its products." *Medtronic, Inc., v. Lohr*, 518 U.S. 470, 501, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996). *See also Banks v. Bowen's Landing Corp.*, 522 A.2d 1222, 1225 (R.I. 1987); *Builders Specialty Co. v. Goulet*, 639 A.2d 59, 60 (R.I.1994), quoting *Palsgraf v. Long Island Railroad Co.*, 248 N.Y. 339, 162 N.E. 99, 100 (1928)) ("The risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension"). The extent of the duty, therefore, is determined by the foreseeability of the risk. Whether a risk existed and its degree of foreseeability are factual questions which must be left to the determination of the jury.

■ Additionally, "the predicate for the failure to warn claim is the general duty to inform users and purchasers of potentially dangerous items of the risks involved in their use." *Medtronic*, 518 U.S. at 501, 116 S.Ct. 2240. Under failure-to-warn analysis in Rhode Island, a product is defective if the seller does not warn of the product's danger, but only if such dangers are reasonably foreseeable and knowable at the time of marketing. *Castrignano v. E.R. Squibb & Sons, Inc.*, 546 A.2d 775, 782 (1988). The record in this case clearly reflects a dispute as to material issues of fact surrounding whether the grapple was dangerous and whether those dangers were foreseeable to Hawco and knowable at the time it was sold. The record also presents additional factual questions as to whether Hawco's action or non-action with respect to the grapple constituted a breach of one of the duties it owed to decedent. These factual issues cannot be resolved at the summary judgment stage but instead must be determined by the jury.

■ Hawco further claims summary judgment is proper because regardless of whether a duty existed and was breached, plaintiff's expert identified only three proximate causes of the injury and Hawco had no responsibility for any of those identified proximate causes. Dr. Marc Richman of the Brown University Engineering Department made a report dated March 21, 1991, in which he states the following:

"[T]here were three concurrent proximate causes of the injury to Mr. Crawford and they are: the lack of hand rails or safety rails around the spreader bar, the lack of a lockout design in the circuitry of the crane, and the negligence of the longshoreman in leaving the switch in the open position when he knew that the crane was to be shut down for repair."

However, Hawco's argument ignores the fact that after his initial report, Dr. Richman reviewed additional discovery material and supplemented his initial findings. In his report of March 29, 1994, Dr. Richman clearly indicates that he believes that among the many proximate causes of the accident are the defective design of the grapple and its control systems and the inadequate instructions and warnings to indicate how to position the grapple when work was to be done on it. Hawco, obviously, was involved in the design and manufacture of the grapple. Whether these alleged defects actually existed and contributed to cause the accident is a question for the jury. Therefore, Hawco's motion for summary judgment on Count I is denied.

### 2. Count II—Strict Liability

Rhode Island has adopted the definition of strict liability set forth in § 402A of the Restatement (second) Torts. *See Ritter v. Narragansett Elec. Co.*, 109 R.I. 176, 283 A.2d 255 (1971). The Restatement provides:

**Special Liability of Seller of Product for Physical Harm to User or Consumer:**

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it was sold.

(2) The rule stated in subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

§ 402A Restatement (Second) Torts.

 This writer was the first trial judge in Rhode Island to charge a jury in strict products liability shortly after the decision in *Ritter.* The charge given was ultimately approved by the Rhode Island Supreme Court in *Parrillo v. Giroux Co., Inc.*, 426 A.2d 1313 (R.I.1981). Therefore, it is the established law in Rhode Island that in order for a plaintiff to prevail in such a case, he or she must prove: (1) that there was a defect in the design or construction of the product in question; (2) that the defect existed at the time the product left the hands of the defendant; (3) that the defect rendered the product unreasonably dangerous, and by unreasonably dangerous it is meant that there was a strong likelihood of injury to a user who was unaware of the danger in utilizing the product in a normal manner; (4) that the product was being used in a way in which it was intended at the time of the accident; and

(5) that the defect was the proximate cause of the accident and plaintiff's injuries.

 Plaintiff here claims that the lack of pilot controlled check valves on the grapple was a defect which made it unreasonably dangerous when it was being used in a normal manner or when undergoing repairs. Additionally, plaintiff argues that Hawco's failure to provide adequate warnings or instructions with the grapple created an unreasonable risk of harm to users. Hawco contends that the grapple was not defective and unreasonably dangerous and that plaintiff has provided no evidence to support her claim. The amended or updated opinion of plaintiff's expert Dr. Richman raises questions of fact as to whether the grapple was defective and whether that defect made the grapple unreasonably dangerous when being used in a normal manner or when it was being repaired. These are questions and issues which must be left to the determination of the jury and cannot be decided by this Court at the summary judgment stage. Therefore, defendant Hawco's motion for summary judgment as to Count II is denied.

### 3. Count III—Breach of OSHA Rulings and Safety Standards

 Count III alleges that Hawco, as well as the other defendants, violated express OSHA rulings and safety standards, and as a result William Crawford was injured and killed. Hawco contends that this Count does not apply to it. Plaintiff's response to Hawco's interrogatory number 36 admits that Hawco did not violate any codified laws, rules, regulations, standards, statutes, ordinances, or other requirements or recommendations by local, state or federal government which caused or contributed to the accident in question. Plaintiff's answer to Hawco's interrogatory number 40 admitted that Hawco did not violate OSHA rulings, and plaintiff's response to Hawco's interrogatory number 41 admitted that she was not aware of any safety standards that Hawco had violated. For these reasons, the Court agrees that there are no material issues of fact in dispute as to this matter. As a matter of law, plaintiff cannot prove the allegations set forth in Count III against Hawco. There-

fore, Hawco's motion for summary judgment with respect to Count III is granted.

### 4. Count IV—Loss of Consortium by Gladys Crawford

■ In 1982, by way of P.L.1982, Ch. 217 § 1 codified as R.I. Gen. Laws § 10–7–1.2, the Rhode Island General Assembly established a cause of action for loss of consortium by a husband or wife for the wrongful death of a spouse. Since Gladys Crawford's claims for wrongful death based on negligence and strict products liability asserted in Counts I and II survive, the loss of consortium claim asserted by her in Count IV likewise survives. Therefore, Hawco's motion for summary judgment with respect to Gladys Crawford's claim set forth in Count IV is denied.

### 5. Count IV—Brandi Crawford's claim for loss of companionship.

Defendant Hawco also claims it is entitled to summary judgment on the claim asserted on behalf of Brandi Crawford in Count IV. It is undisputed that Brandi was not a natural or adopted child of William Crawford at the time of his death. Hawco, thus, claims that she is not entitled to bring a claim under § 10–7–1.2(b) of the Rhode Island Wrongful Death Act.

Plaintiff asserts that the doctrine of equitable adoption should apply in these circumstances and, therefore, Brandi Crawford does have a valid claim under the statute.

R.I. Gen. Laws § 10–7–1.2(b) provides:

Whenever the death of a parent or parents of an unemancipated minor or minors shall be caused by the wrongful act, neglect or default of another person, said minor or minors may recover damages against said person for the loss of parental society and companionship.

Defendant Hawco argues that the terms and language employed in the Wrongful Death Act must be strictly construed, and, therefore, Brandi Crawford cannot recover in this case because William Crawford was not her

"parent" at the time of death. *See Carrigan v. Cole,* 35 R.I. 162, 85 A. 934 (1913). The Rhode Island Supreme Court to date has provided no guidance as to the meaning of the word "parent" in this context.

■ Plaintiff asserts that this is an ideal case for the application of the doctrine of equitable adoption. This doctrine was originally recognized in cases involving inheritances, to protect the interests of those whose family relationships had not been formalized by adoption proceedings at the time of the decedent's death.[2] *Francois v. Cahill,* CA No. PC 92–0604, 1993 WL 853814 at *1, (R.I.Super., May 17, 1993). The doctrine has gradually been incorporated into tort law and was recognized by the Rhode Island Superior Court in *Francois v. Cahill.* According to the Superior Court in *Francois,* the five elements required to establish an equitable adoption are:

1. some showing of an agreement between the adoptive parent and the natural parents;

2. the natural parents giving custody of the child to the adoptive parent;

3. the child giving filial affection, devotion and obedience to the adoptive parent during that parent's lifetime;

4. the adoptive parent taking custody of the child and treating that child as the parent's natural child; and,

5. the death of the adoptive parent without the completion of formal adoption procedures.

*Francois* 1993 WL 853814 at *2, *citing In re Lamfrom's Estate,* 90 Ariz. 363, 368 P.2d 318 (1962); *Laney v. Roberts,* 409 So.2d 201, 203 (Fla.Dist.Ct.App.1982); *Lee v. Gurley,* 260 Ga. 23, 389 S.E.2d 333, 334 (1990). This Court concludes that the Rhode Island Supreme Court will adopt that statement of the law when the occasion presents itself.

■ William Crawford's death prior to the formal adoption of Brandi satisfies the fifth element or component of the rule. However, there are factual issues which must

---

**2.** "Since the family unit is deemed to be an important institution worthy of protection, to the extent that a minor is a member of the family unit, that minor, though not formally adopted— and often that minor has no choice in the matter—must be brought under the protective shield of benefits accorded to other members of that unit." *Francois,* 1993 WL 853814 at *3.

be determined by the jury as to all the other elements. For example, in *Francois*, the Court addressed the requirement of an agreement between the natural and adoptive parents. It commented that "the agreement need not be in writing, need not be express and indeed may be implied from the acts, conduct and admissions of the adopting parties." *Id.* The existence of an agreement, therefore, is a determination that must be made by the jury in this case. For these reasons, Hawco's motion for summary judgment on Brandi Crawford's claim set forth in Count IV is denied.

### B. Harbour & Port's Motion to Dismiss

Harbour & Port claims that plaintiff's claim against it is barred by the applicable Rhode Island statute of limitations and thus should be dismissed pursuant to Rule 12(b)(6). This is a straightforward issue. Crawford's death occurred on March 2, 1991. The Rhode Island statute of limitations applied in wrongful death actions is three years from the date of death. R.I. Gen. Laws § 10–7–2 (1984). Plaintiff claims that the statute of limitations should have been tolled in this case, thereby allowing her to bring a claim against Harbour & Port seven years after William Crawford's death. This Court disagrees.

 A claim brought after the limitations period has run must be dismissed unless there are grounds for tolling the statute. The statute of limitations in the Wrongful Death Act is strictly construed, and the law does not provide an exception for the circumstances present in this case. *See Cadieux v. Int'l Tel. & Telegraph Corp.*, 593 F.2d 142 (1st Cir.1979). Plaintiff claims that the statute of limitations should be tolled because she was barred from asserting a tort claim against Harbour & Port until she attained a final judgment in the LHWCA case. However, she offers no support for this contention. In fact, there are cases which indicate that just the opposite is true—that filing a claim under the LHWCA does not preclude a plaintiff from bringing a concurrent tort action. Thus, there is no tolling of the statute of limitations for a later filed tort action.

*Gould v. Bird & Sons, Inc.*, 5 Wash.App. 59, 485 P.2d 458 (1971).

The LHWCA, by its own terms, is the exclusive means of establishing employer liability for the death of an employee covered by the statute. If successful in the LHWCA claim, plaintiff would not be able to pursue a negligence/tort action against Harbour & Port. However, there was nothing to prevent plaintiff from filing a court action against Harbour & Port in a timely fashion while the LHWCA claim was pending. In the tort action, Harbour & Port would have been entitled to assert the affirmative defense of payment if it had paid the claim.

Plaintiff also claims that she attempted to file an amended complaint adding Harbour & Port as an additional defendant on September 23, 1994 but was not allowed to do so, primarily because of Harbour & Port's argument that the tort claim was time barred by 33 U.S.C. § 905(a) until all appeals in the LHWCA case were exhausted. Reviewing the facts of the case, it is evident that the cause of action accrued on March 2, 1991, triggering the limitations period. The statute of limitations, therefore, ran on March 2, 1994, 7 months prior to the time plaintiff sought to file the amended complaint. The attempt to assert a cause of action on September 23, 1994 would also have been untimely.

 Plaintiff finally argues that this claim should relate back to the date of the original pleading, curing any statute of limitations defects present in the current claim. Fed.R.Civ.P. 15(c)(3) allows a plaintiff to add a new party and, for statute of limitations purposes, the amended pleading relates back to the date of the original complaint *if* the party being brought into the action knew or should have known that "but for a mistake concerning the identity of the proper party, the action would have been brought against the party." Fed.R.Civ.P. 15(c)(3). It is clear from the facts of this case that there was no mistake as to the identity of Harbour & Port and that the failure to include it in the original complaint was a conscious decision made by plaintiff. Therefore, the relation-back rule has no application to this case. *See Peloso v. R.I. Sand & Gravel Co., Inc.*, 114 R.I. 232, 330 A.2d 900 (1975). As plaintiff

points out in her memorandum, Harbour & Port was joined in the litigation as a third party defendant by Cooper/T. Smith in 1991. Plaintiff was certainly aware of Harbour & Port's identity then. In any event, it is clear that Harbour & Port's identity as William Crawford's employer has been known throughout the course of this litigation.

For the reasons asserted above, this Court concludes that plaintiff's claim against Harbour & Port is time barred by the applicable Rhode Island statute of limitations. Therefore, that claim must be dismissed pursuant to Fed. R. Civ. P 12(b)(6).

### 1. AXA's Motion for Summary Judgment

Third party defendant AXA has made a motion for summary judgment on its cross-claim for a declaratory judgment against Harbour & Port. Since plaintiff's claim against Harbour & Port has been dismissed, Harbour & Port's claim against AXA for insurance coverage is now moot and so is AXA's crossclaim against Harbour & Port. Therefore, AXA's motion for summary judgment does not have to be decided.

### IV. Conclusion

For the reasons stated above, Hawco's motion for summary judgment is denied as to Counts I, II, and IV. The motion is granted as to Count III. Harbour & Port's motion to dismiss the complaint against it hereby is granted thus making Harbour & Port's claim against AXA and AXA's crossclaim against Harbour & Port both moot. No judgments will enter in this case until all claims are resolved.

It is so ordered.