738 So.2d 453 (1999)
Roberta WILLIAMS, Appellant,
v.
The ESTATE OF Nero PENDER, Appellee.
No. 98-3023.
District Court of Appeal of Florida, First District.
July 27, 1999.
Scott A. Snavely of Bajorczky & Fournier, Tallahassee, for Appellant.
Harold M. Knowles of Knowles, Marks & Randolph, Tallahassee, for Appellee.
LAWRENCE, J.
Roberta Williams appeals an order determining, by the preponderance of the evidence, that Thelma J. Pender Washington and Mary Elizabeth Pender Rea were equitably adopted by Nero Pender. We reverse and remand because the trial court used an incorrect standard of proof in adjudicating the case.
Thelma J. Pender Washington and Mary Elizabeth Pender Rea (grandnieces) are grandnieces of the late Nero Pender (Pender). Pender died intestate. The grandnieces, having lived with Pender and his second wife[1] from 1953 until their subsequent marriages, filed a "petition for determination of heirs and beneficiaries." *454 The trial judge, after a bench trial, concluded that the grandnieces, by a bare preponderance of the evidence, established that they were equitably adopted by Pender, and thus are entitled to inherit from Pender under the law of intestate succession. (The judge acknowledged that the case turns on the standard of proof to be applied.) The daughter raises this sole issue on appeal.
The Florida Supreme Court first recognized equitable adoption in 1943. Sheffield v. Barry, 153 Fla. 144, 149, 14 So.2d 417, 420 (1943) (denying petition for certiorari to review order denying motion to dismiss and holding: "If the plaintiff substantiated by evidence the allegations with reference to the execution of the contract, the performance on the part of her mother and herself, the partial performance by her foster parents and the intestacy of her foster father she should be awarded a decree."). The court reasoned that, if the plaintiff can prove her allegations, she then is entitled to such rights in the estate at issue as she "would have had if her adoption had been legalized according to the requirements of the laws of Florida," because "equity regards that as done which ought to have been done." Sheffield, 153 Fla. at 147, 148, 14 So.2d at 419. Neither party to the instant case disputes the existence of an action for equitable adoption in Florida, or its elements. A succinct statement of the elements to be proved in an equitable adoption action appears at In re Heirs of Hodge, 470 So.2d 740, 741 (Fla. 5th DCA 1985): an agreement to adopt between the natural and alleged adoptive parents; performance by the natural parents of the child in giving up custody; performance by the child by living in the home of the alleged adoptive parents; partial performance by the alleged adoptive parents in taking the child into their home and treating the child as their child; and intestacy of the alleged adoptive parents. The parties rather dispute the standard of proof required to prove the action.
The Florida Supreme Court, while stopping short of a definitive holding on the issue, suggested in a 1953 case that the proper standard of proof is a "conclusive" showing,
An agreement for adoption was unquestionably entered into between the father of the children and the Caughells. It has to all intents and purposes been carried out. Whether the legal technical requirements have been met may be questionable, but that is not the primary consideration. The important question concerns the welfare of the minor children and whether or not the agreement of the Caughells to bring up the minors properly has been performed. When that is so conclusively shown, as it is here, the minor child is in equity entitled to enforce the agreement with reference to his property rights. The minors in this case were voluntarily surrendered by their father and the adopting father and mother have met every condition contemplated by the agreement to raise and bring up. In other words there has been performance to date, so if it be required that such contracts be in writing to meet the Statute of Frauds (which we do not decide), performance has relieved the present contract of that requirement.
Roberts v. Caughell, 65 So.2d 547, 547-48 (Fla.1953) (citation omitted) (emphasis added) (affirming decree in favor of minor children and holding that the children are entitled to participate in the estate of their foster mother, despite the absence of a legal adoption).[2]
*455 The grandnieces here assert that preponderance of the evidence is the correct standard of proof; they rely on the law of the third district, in Laney v. Roberts, 409 So.2d 201 (Fla. 3d DCA 1982) (reversing, in an action for specific performance of an agreement to adopt, judgment for co-personal representative and holding that the child established virtual adoption[3]), although the standard of proof was not an issue. The third district held:
In the present case, every element of the actionthe agreement to adopt; the surrender of custody by Irene's natural parents; the performance by Irene in living throughout her childhood in the home of the Merickels; the partial performance by the Merickels in taking Irene into the home and treating her as their child; and the intestacy of Mrs. Merickelwas clearly and convincingly established by Irene. The defendants' argument that this overwhelming evidence is eroded by a single instance when Irene was legally required (ironically, because not formally adopted) to sign her marriage application in the name given her at birth is ludicrous. Such paltry evidence is legally insufficient to overcome her claim to virtual adoption. And, even if, arguendo, the relationship between Irene and the Merickels was distanteven non-existent after 1963 when Irene was thirty-five, such a fact does not serve to defeat Irene's claim, long since vested by virtue of the actions of the Merickels and Irene during Irene's childhood. The performance required by the child is satisfied by living in the home of the adoptive parents, not by being an ideal child forever, or even during childhood. Lastly, despite the defendants' contrary suggestions, there is absolutely no evidentiary value in the fact that Irene knew she was not formally adopted (which fact, by definition, is the gist of this lawsuit) or was unaware of the agreement (to which she was not a party) between her natural parents and the Merickels until Mrs. Merickel died.
Id. at 203 (citation and footnote omitted) (emphasis added). Our sister court thus found the elements of equitable adoption had been proven by clear and convincing evidence. Id. The grandnieces nevertheless point to language in a Laney footnote for support: "The plaintiff need only prove the elements of virtual adoption by a preponderance of the evidence." Id. at 203 n. 3. This language however is dictum, although it was apparently relied upon by the trial judge in the instant case. The supreme court and the third district thus both examined equitable adoption claims which had been proven by more than a mere preponderance of the evidence.
We also find guidance regarding the appropriate standard of proof in an analogous case from our own court, involving the claim of equitable adoption by an illegitimate child:
We affirm the trial court's order to the extent that the facts did not establish "virtual adoption" and that "virtual legitimation" does not exist as a distinct doctrine in Florida law. However, in denying Christopher's petition to have himself declared a lineal descendant of Wilmer Breedlove [Christopher claimed to be the child of Wilmer by Wilmer's former employee], the trial court apparently did not consider section 732.108(2)(b) which provides that a person born out of wedlock is a lineal descendant of his father if "[t]he paternity of the father is established by an adjudication before or after the death of the father." Thus, by virtue of that subsection, the putative heir, for purposes of intestate succession, may prove paternity by evidence other than a written acknowledgment of paternity by the father *456 or the marriage of the natural parents before or after the birth of the person born out of wedlock. However, the standard of proof under section 732.108(2)(b) should be clear, strong and unequivocal, that is, the person born out of wedlock should prove paternity by clear and convincing evidence. See In re Estate of Odom, 397 So.2d 420 (Fla. 2d DCA 1981). Since the trial court did not consider the evidence in terms of section 732.108(2)(b), we reverse and remand the cause for the trial court to reconsider this issue. An evidentiary hearing for such purpose may be held.
Breedlove v. Estate of Breedlove, 586 So.2d 466, 467 (Fla. 1st DCA 1991) (statutory citations omitted) (emphasis added). Breedlove thus provides persuasive support for a "clear and convincing" standard of proof. The majority of states moreover impose the "clear and convincing" standard, or a standard so similar as to be indistinguishable. See William M. Mc-Govern, Jr,, Sheldon F. Kurtz, & Jan Ellen Rein, Wills, Trusts and Estates 56 (1988) ("Most states require evidence `so clear, cogent, and convincing as to leave no reasonable doubt as to the fact that such agreement was made.'"); see also Jan Ellen Rein, Relative by Blood, Adoption, and Association: Who Should Get What and Why, 37 Vand. L.Rev. 711, 787 (1984) ("clear, cogent and convincing evidence").
We are persuaded by these authorities that the "clear and convincing" standard is the correct one to be applied in an action for "equitable" or "virtual" adoption. We thus hold that in an action for equitable or virtual adoption, the following elements must be proved by clear and convincing evidence: (1) an agreement to adopt between the natural parents and alleged adoptive parents; (2) performance by the natural parents of the child in giving up custody; (3) performance by the child by living in the home of the alleged adoptive parents; (4) partial performance by the alleged adoptive parents in taking the child into their home and treating the child as their own child; and (5) intestacy of the alleged adoptive parents.
We accordingly reverse the order of the trial court and remand for consistent proceedings.
ALLEN and BENTON, JJ., CONCUR.
NOTES
[1] Pender's second wife predeceased him.
[2] The dissenters, engaged in a de novo review of the evidence in the belief that the case was distinguishable from an earlier case, said:

Even though it may be admitted that Charles W. Caughell agreed to adopt the two minor children, it is essential, in order to establish the fact that the minors are the legal heirs of Etta Catherine Caughell, deceased, that it be established by a preponderance of the evidence that she entered into the agreement to adopt the said minors as alleged in the amended bill of complaint. Roberts v. Caughell, 65 So.2d 547, 550 (Fla. 1953). This dissenting language, of course, is irrelevant to our search for the correct standard of proof.
[3] The terms "virtual adoption" and "equitable adoption" are used interchangeably.