Leo **GUILBEAULT**, Plaintiff,

v.

**R.J. REYNOLDS TOBACCO COMPANY, Defendant.**

No. 98–035–L.

United States District Court, D. Rhode Island.

Jan. 12, 2000.

Ralph R. Ryan, Pawtucket, RI, Stephen R. White, Warwick, RI, for Plaintiff.

Joseph A. Kelly, Paula A. Kelly, Carroll, Kelly & Murphy, Michael T. Sullivan, Morrison, Mahoney & Miller, Providence, RI, Richard G. Stuhan, Paul D. Koethe, Steven N. Geise, Jones, Day, Reavis & Pogue, Cleveland, OH, for Defendant.

## DECISION AND ORDER

LAGUEUX, District Judge.

In January 1998, plaintiff Leo Guilbeault filed a complaint against defendant R.J. Reynolds Tobacco Company. Thereafter, defendant moved to dismiss the complaint on the ground that it violated Federal Rules of Civil Procedure 8(a)(2), requiring that the complaint set forth "a short and plain statement of the claim[,]" and 8(e)(1), requiring the pleading to be "simple, concise, and direct." Defendant's motion was granted and plaintiff was given leave to file an amended complaint. Plaintiff then filed the First Amended Complaint which is now under scrutiny in this Court. Defendant has moved to dismiss the Complaint in its entirety for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff has opposed the motion.

This Court initially referred the matter to U.S. Magistrate Judge Robert W. Lovegreen pursuant to 28 U.S.C. § 636(b)(1)(B)(1994). Judge Lovegreen issued a Report and Recommendation, concluding that defendant's motion should be granted in part and denied in part. After a *de novo* review, this Court concludes that defendant's motion to dismiss should be granted as to all claims. However, plaintiff will be given the opportunity to file a second amended complaint consistent with this opinion.

### I. *Background*

Plaintiff, a resident of Rhode Island, began buying and smoking Camel brand cigarettes in 1951. In 1997, he was diagnosed with lung cancer. He maintains that his lung cancer was caused by his smoking. In January 1998, plaintiff filed a complaint against defendant, the company that designs, manufactures, sells and distributes Camel brand cigarettes. The Complaint was thirty-two pages long and contained references to more than fifty documents. Defendant moved to dismiss the Complaint claiming that it violated the dictates of Rule 8, which requires concise pleading. The motion to dismiss was granted and plaintiff was given time to amend the Complaint. Thereafter, plaintiff filed a First Amended Complaint, which is the subject of the present motion.

The First Amended Complaint is twenty-one pages long and does not contain references to many of the previously mentioned documents. However, as Judge Lovegreen noted, it still appears to contain an enormous amount of material that is extraneous to plaintiff's claims. This may be because, as plaintiff's counsel admitted at oral argument, it was "modeled after" a similar complaint filed in Florida. While this Court appreciates the need for efficiency in drafting complaints, it cautions attorneys for suit filers that a complaint should be tailored to the grievances and facts pertaining to the individual filing the complaint. In any event, defendant has not brought another Rule 8 motion to dismiss and this Court will go forward with an analysis of the First Amended Complaint.

The First Amended Complaint (after one wades through excess verbiage) alleges three theories of recovery: 1) strict product liability, 2) negligence and 3) conspiracy. The strict liability claim is based on the alleged defective design of defendant's cigarettes and on defendant's failure to warn of the dangers of smoking. The negligence claim is also based on defective design and failure to warn with the additional claim that defendant's cigarettes were negligently manufactured. The conspiracy claim rests mainly on allegations of fraud.

Defendant has moved to dismiss the whole First Amended Complaint for failure to state any claim upon which relief can be granted. Specifically, defendant contends that plaintiff's design defect and failure to warn claims fail because the dangers of smoking have been "common knowledge" for some period of time, thus rendering cigarettes not unreasonably dangerous as a matter of law. In the alternative, defendant argues that plaintiff's design defect claims fail as a matter of law because plaintiff has not alleged a safer feasible alternative design and that plaintiff's failure to warn claims fail because they are preempted by federal law.

In addition, defendant argues that plaintiff's negligent manufacturing claim fails because plaintiff has failed to allege a necessary element of that claim, namely, a deviation from defendant's standard cigarette design. Finally, defendant argues that plaintiff's conspiracy claim fails because the underlying intentional tort of fraud was not pleaded with particularity as required by Federal Rule of Civil Procedure 9(b) and because plaintiff has not alleged justifiable reliance on specific misrepresentations.

This matter was referred to Magistrate Judge Lovegreen and he made the following recommendations: 1) defendant's motion to dismiss the design defect and failure to warn claims based on the "common knowledge" doctrine should be denied, 2) defendant's motion to dismiss the design defect claims on the ground that plaintiff has failed to allege a safer feasible alternative design should be denied and, further, that defendant's attorneys should be sanctioned under Federal Rule of Civil Procedure 11 for misrepresenting Rhode Island law on this issue, 3) plaintiff's failure to warn claims are preempted by federal law insofar as they are based on conduct subsequent to 1969, but they should not be dismissed because the claims are based on pre–1969 conduct, 4) defendant's motion to dismiss the negligent manufacturing claim should be granted and 5) defendant's motion to dismiss the conspiracy claim based on a violation of Rule 9(b) should be granted, but dismissal should be without prejudice to allow plaintiff to replead that claim with particularity.

Defendant has objected to the Report and Recommendation. *See* 28 U.S.C. § 636(b)(1)(C)(1994). Plaintiff has not.

After a *de novo* review, this Court grants defendant's motion to dismiss the strict liability and negligence claims based on the "common knowledge" doctrine and grants the motion to dismiss the conspiracy/fraud claim based on plaintiff's failure to comply with Rule 9(b). This Court concludes, however, that plaintiff may

amend the complaint to attempt to state a claim on which relief could be granted consistent with the reasoning below. Finally, this Court declines to adopt the Magistrate Judge's recommendation to sanction defendant's lawyers for their arguments regarding the requirement of pleading a safer feasible alternative design.

## II. *Applicable Law*

### A. Standard of Review

In ruling on a motion to dismiss, the Court construes the complaint in the light most favorable to plaintiff, taking all well-pleaded allegations as true and giving plaintiff the benefit of all reasonable inferences. *See Figueroa v. Rivera*, 147 F.3d 77, 80 (1st Cir.1998). Dismissal under Rule 12(b)(6) is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). However, "minimal requirements are not tantamount to nonexistent requirements." *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir.1988). The standard "does not mean...that a court must (or should) accept every allegation made by the complainant, no matter how conclusory or generalized ....'[E]mpirically unverifiable' conclusions, not 'logically compelled, or at least supported, by the stated facts,' deserve no deference." *United States v. AVX Corp.*, 962 F.2d 108, 115 (1st Cir.1992) (citations omitted).

Recommendations made by magistrate judges on dispositive pretrial motions, such as a 12(b)(6) motion, are reviewed *de novo* by the district court. *See* Fed.R.Civ.P. 72(b).

In making a *de novo* determination, the district court "may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions." Fed.R.Civ.P. 72(b); *see also* 28 U.S.C. § 636(b)(1)(C)(1994). In reviewing a mag-

istrate judge's recommendations, the district court must actually review and weigh the evidence presented to the magistrate judge, and not merely rely on the magistrate judge's report and recommendation. *See United States v. Raddatz*, 447 U.S. 667, 675, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980); *Gioiosa v. United States*, 684 F.2d 176, 178 (1st Cir.1982).

### B. Strict Product Liability

Rhode Island has adopted the law of strict product liability set forth in the Restatement (Second) of Torts § 402A (1965). *See Ritter v. Narragansett Elec. Co.*, 109 R.I. 176, 283 A.2d 255, 261–63 (1971). Section 402A provides:

Special Liability of Seller of Product for Physical Harm to User or Consumer

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

Restatement (Second) of Torts § 402A (1965). For a plaintiff to prevail in such a case, he or she must prove:

(1) that there was a defect in the design or construction of the product in question; (2) that the defect existed at the time the product left the hands of the defendant; (3) that the defect rendered the product unreasonably dangerous...; (4) that the product was being

used in a way in which it was intended at the time of the accident; and (5) that the defect was the proximate cause of the accident and plaintiff's injuries. *Crawford v. Cooper/T. Smith Stevedoring Co., Inc.*, 14 F.Supp.2d 202, 211 (D.R.I. 1998). *See also Parrillo v. Giroux Co., Inc.*, 426 A.2d 1313, 1316 (R.I.1981).

■ Rhode Island employs the "consumer-expectation" test to determine if a product is defective, *Castrignano v. E.R. Squibb & Sons, Inc.*, 546 A.2d 775, 779 (R.I.1988), which requires that it be "'in a condition not contemplated by the ultimate consumer[.]'" *Ritter*, 283 A.2d at 262 (quoting Restatement (Second) of Torts § 402A cmt. g (1965)). A product is "unreasonably dangerous" if there is "a strong likelihood of injury to a user who was unaware of the danger in utilizing the product in a normal manner[.]" *Crawford*, 14 F.Supp.2d at 211. *See also Ritter*, 283 A.2d at 263.

■ A product may be unreasonably dangerous due to one or more of three defects: design, marketing (failure to warn) or manufacturing. *Castrignano*, 546 A.2d at 779. A section 402A claim based on a failure to warn defect, however, is more properly analyzed under a negligence regime as discussed below, because the duty to warn exists only with regard to "dangers that are reasonably foreseeable and knowable at the time of marketing." *Id.* at 782 (citing *Thomas v. Amway Corp.*, 488 A.2d 716, 722 (R.I.1985)). *See also* Restatement (Second) of Torts § 402A cmt. j (1965); *DiPalma v. Westinghouse Elec. Corp.*, 938 F.2d 1463, 1466 (1st Cir. 1991)("It is clear under Rhode Island law that the duty to warn, the violation of which is actionable by means of the so-called strict liability cause of action, is measured...by the same standard as the duty to warn that is enforceable in a negligence cause of action.").

## C. Negligence

■ The elements of a section 402A claim and a negligence claim based on a product defect overlap significantly, with the negligence claim having the additional requirement that the defendant "knew or had reason to know...that [the product] was defective in any manner." *Ritter*, 283 A.2d at 259. In a negligent failure to warn claim, as discussed above, this requires that the defendant knew or had "'reason to know that the product poses a danger to consumers.'" *DiPalma*, 938 F.2d at 1466 (quoting *Scittarelli v. Providence Gas Co.*, 415 A.2d 1040, 1043 (R.I.1980)).

## D. Conspiracy

■ A civil conspiracy claim requires the specific intent to do something illegal or tortious. *See, e.g., Fleet Nat'l Bank v. Anchor Media Television, Inc.*, 831 F.Supp. 16, 45 (D.R.I.1993), *aff'd*, 45 F.3d 546 (1st Cir.1995); *Stubbs v. Taft*, 88 R.I. 462, 149 A.2d 706, 708–709 (1959). Civil conspiracy is not an independent basis of liability, but merely a means of establishing joint liability for tortious conduct. Thus, a civil conspiracy claim requires a valid underlying intentional tort theory. *See, e.g., ERI Max Entertainment, Inc. v. Streisand*, 690 A.2d 1351, 1354 (R.I.1997).

■ Plaintiff's claim sounds in fraud. *See* First Amended Complaint ¶ 4.1 (Defendant "participated in a civil conspiracy to commit fraud by commission and by omission"). To establish fraud in Rhode Island, a plaintiff must show: (1) a false or misleading statement of material fact that was (2) known by the defendant to be false and (3) made to deceive, (4) upon which the plaintiff relied to his detriment. *See National Credit Union Admin. Bd. v. Regine*, 795 F.Supp. 59, 70 (D.R.I.1992)(citing *B.S. Int'l Ltd. v. Licht*, 696 F.Supp. 813, 827 (D.R.I.1988)); *McGovern v. Crossley*, 477 A.2d 101, 103 (R.I.1984); *Halpert v. Rosenthal*, 107 R.I. 406, 267 A.2d 730, 733 (1970).

■ Fraud can be grounded on either affirmative acts or concealment. *See Holmes v. Bateson*, 434 F.Supp. 1365, 1387

(D.R.I.1977), *aff'd in part, rev'd on other grounds,* 583 F.2d 542 (1st Cir.1978). However, a claim based on concealment will not lie absent a duty to speak. *See Home Loan and Inv. Assoc. v. Paterra,* 105 R.I. 763, 255 A.2d 165, 168 (R.I.1969). Such a duty can arise if a statement is made without knowledge of its falsity and the falsity subsequently becomes known to the speaker. *See McGinn v. McGinn,* 50 R.I. 236, 146 A. 636, 638 (1929).

▉ Fraud is a state law cause of action and state law governs the burden of proving fraud at trial. However, the procedure for pleading fraud in federal court in a diversity suit is governed by the requirements of Rule 9(b). *See Hayduk v. Lanna,* 775 F.2d 441, 443 (1st Cir.1985). Rule 9(b) states: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R.Civ.P. 9(b). The First Circuit has interpreted Rule 9(b) as requiring a plaintiff to identify "the time, place, and content of the alleged false or fraudulent representations." *Powers v. Boston Cooper Corp.,* 926 F.2d 109, 111 (1st Cir.1991). When a plaintiff claims that product advertisement and promotion led to his injury, he must "identify specific advertising he ha[s] seen and how it ha[s] affected him." *Smith v. Anheuser–Busch, Inc.,* 599 A.2d 320, 320 (R.I.1991)(per curiam).

### III. *Discussion*

This matter is properly before the Court via diversity jurisdiction. *See* 28 U.S.C. § 1332 (1994). There is no dispute that Rhode Island law applies. Each of defendant's objections to the Report and Recommendation will be considered in turn.

### A. Strict Liability and Negligence Claims
#### Applicability of the "Common Knowledge" Doctrine

▉ As noted above, a product is "unreasonably dangerous" if there is "a strong likelihood of injury to a user who was unaware of the danger in utilizing the product in a normal manner[.]" *Crawford,* 14 F.Supp.2d at 211. *See also Ritter,* 283 A.2d at 263. Consequently, " '[t]he emphasis upon the likelihood of injury takes into account the consumer's or user's knowledge of danger.' " *Ritter,* 283 A.2d at 263 (quoting *Drummond v. General Motors Corp.,* No. 771098 (Cal.Super.Ct. July 29, 1966)). It follows that a product cannot be considered "unreasonably dangerous" if its risks are "well known to any reasonable consumer[.]" *Jackson v. Corning Glass Works,* 538 A.2d 666, 669 (R.I. 1988)(no strict liability for injury caused by toppling of glassware stack when it was common knowledge that stack will fall with lateral force and glass will break). Invocation of this principle has resulted in the development of a doctrine used to defeat product liability based on the "common knowledge" of the product's risks by the reasonable consumer. *Id.* (citing *Metal Window Products Co. v. Magnusen,* 485 S.W.2d 355 (Tex.Civ.App.1972)). *See also American Tobacco Co. v. Grinnell,* 951 S.W.2d 420, 424 (Tex.1997)(characterizing issue in product liability action based on cigarettes as whether or not the "common knowledge defense" applied). Because the elements of the claims are similar as discussed above, the "common knowledge" doctrine will bar both strict liability and negligence actions based on product defects.

The comments to Section 402A of the Restatement (Second) of Torts incorporate this principle. Comment i, which describes the term "unreasonably dangerous," states: "The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." Restatement (Second) of Torts § 402A cmt. i (1965). Comment j, which addresses failure to warn claims, states: "[A] seller is not re-

quired to warn with respect to products, or ingredients in them, which are only dangerous, or potentially so, when consumed in excessive quantity, or over a long period of time, when the danger, or potentiality of danger, is generally known and recognized." Restatement (Second) of Torts § 402A cmt. j (1965). *See also Amway,* 488 A.2d at 722 (adopting comment j in Rhode Island).

Plaintiff's pleading essentially alleges that defendant's cigarettes were unreasonably dangerous and caused plaintiff's injury because they "cause, or contribute to in substantial fashion," a variety of human illnesses and injuries, including lung cancer. *See* First Amended Complaint ¶ 1.5. Plaintiff asserts that this allegedly unreasonable dangerousness is caused by all three types of defects: design, manufacturing and marketing (failure to warn). Defendant argues that the health risks of smoking and particularly the risk of cancer were, during the time periods relevant to this lawsuit, "common knowledge" such that cigarettes cannot be found "unreasonably dangerous" as a matter of law. As this is a motion to dismiss and not a motion for summary judgment, defendant essentially asks this Court to take judicial notice of this fact.

█ A federal court may take judicial notice of a fact when it is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201.

Whether the common knowledge doctrine defeats plaintiff's strict liability and negligence claims as a matter of law is an issue of first impression in Rhode Island. Other courts considering the issue have reached varied conclusions regarding when, if at all, assorted risks, particularly general disease-related risks and risks of addiction, associated with smoking became common knowledge. The Northern District of Ohio, applying Ohio law, has been particularly active in dismissing smokers' claims under Rule 12(b)(6) based on the common knowledge of health risks associated with smoking since at least 1966 and as far back as 1940. *See Hollar v. Philip Morris Inc.,* 43 F.Supp.2d 794, 807 (N.D.Ohio 1998)(dismissing two plaintiffs' product liability claims, who began smoking in 1968 and 1971 respectively, because "[t]he case law is well settled that the health hazards of smoking were within the ordinary citizen's 'common knowledge' " at that time); *Jones v. American Tobacco Co.,* 17 F.Supp.2d 706, 718 (N.D.Ohio 1998)(concluding that the health risks of cigarettes became common knowledge in 1966 and dismissing under 12(b)(6) claims of a plaintiff who began smoking in 1968, as well as those of a plaintiff who smoked from 1954–1990 because cigarettes could not be considered unreasonably dangerous for the majority of the time that plaintiff smoked); *Paugh v. R.J. Reynolds Tobacco Co.,* 834 F.Supp. 228, 230–231 (N.D.Ohio 1993)(dismissing claims of plaintiff who smoked from 1940–1990 because "[t]he dangers posed by tobacco smoking have long been within the ordinary knowledge common to the community").

Courts in other jurisdictions, however, have refused to dismiss based on the common knowledge rule. *See Hill v. R.J. Reynolds Tobacco Co.,* 44 F.Supp.2d 837, 844–845 (W.D.Ky.1999)(applying Kentucky law)(refusing to take judicial notice of the common knowledge of the health risks of smoking before 1969, the relevant time period for plaintiff's failure to warn claims, and thus denying motion to dismiss); *Thomas v. R.J. Reynolds Tobacco Co.,* 11 F.Supp.2d 850, 852–853 (S.D.Miss.1998) (applying Mississippi law) (admitting in a footnote that the Mississippi Supreme Court "would find that the dangers of smoking have long been known to the community[,]" but refusing to dismiss design defect claim because plaintiff was alleging that nicotine levels had been manipulated in defendant's cigarettes, thus removing

their risks from the community's common knowledge).

Indeed, there has been disagreement even at the summary judgment stage of the proceedings. *See, e.g., Grinnell,* 951 S.W.2d at 424 (applying Texas law)(granting summary judgment to defendant on claims based on failure to warn of health risks of smoking since 1952 because the general ill-effects of smoking were common knowledge at that time, but refusing to grant summary judgment on claims based on failure to warn of addictive nature of cigarettes because there was an issue of fact as to when the addictive qualities of cigarettes became common knowledge).[1] *See also Allgood v. R.J. Reynolds Tobacco Co.,* 80 F.3d 168, 172 (5th Cir. 1996), *cert. denied,* 519 U.S. 930, 117 S.Ct. 300, 136 L.Ed.2d 218 (1996)(applying Texas law)(affirming grant of summary judgment to defendant on "lifetime smoker's" failure to warn claim for failure to comply with statute of limitations, but noting in dicta that claim could alternatively be dismissed under "common knowledge" theory, as "the dangers of cigarette smoking have long been known to the community")(citing *Roysdon* and *Paugh* ); *Roysdon v. R.J. Reynolds Tobacco Co.,* 849 F.2d 230, 236 (6th Cir.1988)(applying Tennessee law)(applying common knowledge doctrine to affirm grant of summary judgment to defendant on plaintiff's product liability claims spanning 1974–1984, citing with approval the district court's observation that " 'tobacco has been used for over 400 years....Knowledge that cigarette smoking is harmful to health is widespread and can be considered part of the common knowledge of the community' "); *Insolia v. Philip Morris Inc., et al,* 53 F.Supp.2d 1032, 1040 (W.D.Wis.1999)(applying Wisconsin law)(granting summary judgment to defendants on plaintiffs', who began smoking in 1935, 1952 and 1953, design defect claims based on both general health risks associated with smoking and addictive risks, apparently assuming that general health risks were common knowledge and explicitly holding that plaintiffs had not produced admissible evidence to create a genuine issue of fact as to whether addictive risks of smoking were common knowledge). *But see Burton v. R.J. Reynolds Tobacco Co.,* 884 F.Supp. 1515, 1526 (D.Kan.1995)(applying Kansas law)(refusing to grant summary judgment to defendants on plaintiff's failure to warn claims dating back to 1954 because a factual issue existed as to whether consumers had knowledge of all the dangers of smoking, in particular addictive dangers, at that time); *Rogers v. R.J. Reynolds Tobacco Co.,* 557 N.E.2d 1045, 1054–1055 (Ind.Ct.App.1990)(citing *Roysdon* approvingly for the proposition that the health risks of smoking have been known for some time but refusing to grant summary judgment on product liability claims dating back to 1953 because an issue of fact existed as to whether there is a state of common knowledge regarding the addictive qualities of cigarettes).

To summarize, most of the courts considering the common knowledge of the general disease-related health risks of smoking have placed common knowledge at least at 1966 and some before. Most courts that have refused to apply the doc-

---

1. The Court's holding regarding the addictive nature of cigarettes, however, has been superseded by statute as stated by the Fifth Circuit in *Sanchez v. Liggett & Myers, Inc.,* 187 F.3d 486, 490 (5th Cir.1999). In 1993, after the lawsuit in *Grinnell* was filed, the Texas legislature codified comment i to Section 402A of the Restatement (Second) of Torts to preclude product liability actions based on cigarettes. *See id.* at 489. The *Sanchez* Court held that the statute superseded the *Grinnell* Court's holding regarding the addictive nature of cigarettes because the plain language of the statute and its legislative history established that the Texas legislature did not intend to distinguish between general health dangers and addictive dangers of smoking when assessing "common knowledge." *See id.* at 490. The Court then relied on the *Grinnell* Court's determination that the dangers of smoking have been known since at least 1952 to dismiss under the statute the product liability claim of a plaintiff who had smoked since 1957. *See id.* at 490–491.

trine to those time periods have distinguished between common knowledge of the general health risks of smoking, which they acknowledge accrued earlier, and common knowledge of cigarettes' addictive nature, which some suggest may still be disputed. *See Thomas,* 11 F.Supp.2d at 852–853; *Burton,* 884 F.Supp. at 1526; *Grinnell,* 951 S.W.2d at 424; *Rogers,* 557 N.E.2d at 1055. *Cf. Hill,* 44 F.Supp.2d at 844. Thus, claims like the one in this case alleging that cigarettes are unreasonably dangerous because they cause various diseases including lung cancer have been disposed of as a matter of law more often than claims alleging unreasonable dangerousness due to their addictive nature.

Of course, none of those cases is binding on this Court. It is with the background of this burgeoning area of the law, however, that this Court considers the issue.

Defendant first argues that comment i to Section 402A precludes on its face plaintiff's strict liability and negligence claims because it establishes that cigarettes are not "unreasonably dangerous." Specifically, defendant relies on the following passage:

> Good whiskey is not unreasonably dangerous merely because it will make some people drunk, and is especially dangerous to alcoholics; but bad whiskey, containing a dangerous amount of fuel oil, is unreasonably dangerous. Good tobacco is not unreasonably dangerous merely because the effects of smoking may be harmful; but tobacco containing something like marijuana may be unreasonably dangerous. Good butter is not unreasonably dangerous merely because, if such be the case, it deposits cholesterol in the arteries and leads to heart attacks; but bad butter, contaminated with poisonous fish oil, is unreasonably dangerous.

Restatement (Second) of Torts § 402A cmt. i (1965). This Court rejects defendant's argument for two reasons.

First, although the Rhode Island Supreme Court has adopted several of the comments to the Restatement, *see Castrignano,* 546 A.2d at 780 (comment k); *Amway,* 488 A.2d at 722 (comment j); *Brimbau v. Ausdale Equip. Rental Corp.,* 440 A.2d 1292, 1297 (R.I.1982) (comment f); *Romano v. Westinghouse Elec. Co.,* 114 R.I. 451, 336 A.2d 555, 558 (1975)(comment m); *Ritter,* 283 A.2d at 262–263 (comment g), it has not explicitly adopted, nor even discussed, comment i. This Court acknowledges, however, that adoption of comment i is not unlikely given Rhode Island's willingness to adopt other comments. *See Ritter,* 283 A.2d at 262 ("We direct attention to the fact that § 402A is accompanied in the Restatement...by a comprehensive commentary as to its meaning and application."). *But see Castrignano,* 546 A.2d at 782 (adopting comment k only as an affirmative defense).

Nevertheless, even if this Court were to predict that the Rhode Island Supreme Court would adopt comment i, plaintiff's claim would not necessarily be barred. Several courts considering this issue have held that, because cigarettes are manufactured products and not raw tobacco, comment i "does not, as a matter of law, remove all claims of defective tobacco products from the operation of Section 402A." *Burton,* 884 F.Supp. at 1522. *See also Witherspoon v. Philip Morris Inc.,* 964 F.Supp. 455, 466 (D.D.C.1997)(citing *Burton* ); *Rogers,* 557 N.E.2d at 1053 n. 8. For example, at least one court has recognized that design defect claims that allege the deliberate addition of harmful substances beyond those naturally occurring in tobacco disqualify cigarettes as "good tobacco" and thus would allow a finding that they are defective and unreasonably dangerous. *Thomas,* 11 F.Supp.2d at 852–853.

Furthermore, this Court is aware of no case that has dismissed a cigarette product liability claim solely on the basis of the language contained in comment i. The cases cited above that have dismissed such claims have first conducted an analysis of

the specific risks claimed by plaintiff to have caused his or her injury and whether those risks were "common knowledge" during the relevant time period. *See, e.g., Sanchez,* 187 F.3d at 490–491; *Hollar,* 43 F.Supp.2d at 806–807; *Jones,* 17 F.Supp.2d at 716–718; *Paugh,* 834 F.Supp. at 230–231. This Court will do the same instead of blindly applying comment i to bar plaintiff's claims as defendant suggests.

Defendant next argues that this Court has "approved" the line of cases that have applied the common knowledge doctrine to bar smokers' claims originating as far back as the 1940's and 1950's. Indeed, in *Arnold v. R.J. Reynolds Tobacco Co.,* 956 F.Supp. 110, 115 n. 8 (D.R.I.1997), this writer cited *Allgood,* 80 F.3d at 172, for the proposition that the " 'dangers of cigarette smoking have long been known to the community.' " In that case, this Court determined that a "discovery" rule was appropriate when applying the statute of limitations in a cigarette product liability case and the reference to *Allgood* was made not in the holding of the Court, but in an attempt to explain at what point a smoker should normally draw the connection between an injury and the plaintiff's use or exposure to cigarette smoke. *See id.* Thus, although suggestive, this statement alone clearly cannot be relied upon in this case where such a conclusion will have the effect of terminating plaintiff's lawsuit.

However, after thoroughly reviewing the facts regarding the evolution of the public's knowledge of smoking-related dangers, this Court is satisfied that it can take judicial notice of the community's common knowledge of the general disease-related health risks associated with smoking, including the risk of contracting cancer, as of 1964.

In 1962, President Kennedy approved the formation of an advisory committee to investigate the health issues concerning smoking. *See* Smoking and Health, Report of the Advisory Committee to the Surgeon General of the Public Health Service at 7–8 (U.S. Dep't of Health, Educ. & Welfare 1964)("1964 Advisory Committee Report"). In January 1964, the Advisory Committee issued a 387–page report, which concluded, among other things, that smoking is "causally related to lung cancer in men[.]" *Id.* at 31.

The federal government reacted immediately to the Report. The Federal Trade Commission promulgated regulations that would have required a warning to be placed on cigarette packages and in advertisements that "smoking is dangerous to health and may cause death from cancer and other diseases." 29 Fed.Reg. 8324, 8325 (1964). In addition, a number of states proposed laws to govern the sale, advertising and labeling of cigarettes. *See* 111 Cong. Rec. 13,901 (1964)(statement of Sen. Moss).

Before these efforts took effect, however, Congress passed the Federal Cigarette Labeling and Advertising Act, Pub.L. No. 89–92, 79 Stat. 282, *codified as amended,* 15 U.S.C. §§ 1331–1341 (1994)("Labeling Act"), which required all cigarette packages to contain the warning: "Caution: Cigarette Smoking May Be Hazardous to Your Health." The main purpose of the Labeling Act was to adequately inform the public about the dangers of cigarette smoking and to protect the national economy from the imposition of diverse and confusing warning requirements regarding cigarettes. *See id.* In 1969, Congress enacted the Public Health Cigarette Smoking Act of 1969, Pub.L. No. 91–222, 84 Stat. 87, *codified as amended,* 15 U.S.C. §§ 1331–1341 (1994) ("1969 Act"), which amended the Labeling Act to require the now familiar warning: "The Surgeon General Has Determined That Cigarette Smoking is Dangerous to Your Health."

The American Law Institute also reacted to the 1964 Advisory Committee Report by adopting Section 402A of the Second Restatement of Torts, including comment i which acknowledges the "harmful" effects of smoking, on May 22,

1964, five months after the Report's release. *See* Restatement (Second) of Torts § 402A (1965). Although, as discussed above, the comment is not dispositive on the issue of common knowledge, the timing of its adoption is certainly relevant to the question of when a consensus formed regarding the risks of smoking.

Publicity surrounding the 1964 Advisory Committee Report and reactions to it was "ubiquitous." Paul G. Crist and John M. Majoras, The "New" Wave in Smoking and Health Litigation–Is Anything Really So New?, 54 Tenn. L.Rev. 551, 557 (1987)("Crist and Majoras"). As such, the Report has been referred to as "the foundation of the modern anti-smoking movement." Matthew Baldini, The Cigarette Battle: Anti–Smoking Proponents Go For The Knockout, 26 Seton Hall L.Rev. 348, 349 (1995). *See also* 111 Cong. Rec. 13,900 (1964)(statement of Sen. Moss)("The extensive news coverage [of the 1964 Advisory Committee Report] made it virtually impossible for any of us to ignore the findings, and the stature of the highly competent and unbiased committee was such that there could no longer be any reasonable dispute concerning the evidence linking cigarette smoking to lung cancer and other major illnesses."). The profound societal impact of the Advisory Committee's Report is evidenced by the fact that nearly one in four adult men gave up smoking in 1964. *See* H.R.Rep. No. 449, 89th Cong., 1st Sess. 3 (1965), *reprinted in* 1965 U.S.C.C.A.N. 2350, 2352. *See also* Paul Raeburn, 26% of Americans Still Smoke 30 Years After Surgeon General's Report, Chi. Trib., Jan. 10, 1994, *available in* 1994 WL 6511369 (recognizing that the 1964 Surgeon General's report generated heightened public concern and awareness and caused a 20% decrease in cigarette consumption).

■■■ This Court is satisfied that, after the extensive publicity surrounding the 1964 Advisory Committee Report's unequivocal conclusion that smoking causes cancer, all reasonable consumers should be charged with this knowledge. The Court notes that there is extensive evidence that the health dangers of smoking were well known even before 1964, *see generally* Crist and Majoras, and thus a more expansive application of the common knowledge doctrine may well be available on a motion for summary judgment. However, because of the severity of the result on a motion to dismiss, this Court will limit judicial notice of the common knowledge doctrine at this stage of the proceedings to 1964.

Having found 1964 to be the pivotal date, the question now is how to apply it to this case. Plaintiff began smoking in 1951; therefore, plaintiff is not precluded as a matter of law from asserting product liability for the period from 1951–1964, at least on the basis of the common knowledge doctrine. However, in addition to successfully pleading that cigarettes are unreasonably dangerous, plaintiff must also allege that the defect in the product proximately caused his injury. *See Crawford*, 14 F.Supp.2d at 211. In his complaint, plaintiff makes a general allegation of causation, stating: "As a direct and proximate result of plaintiff's use of the defendant's cigarette products, plaintiff suffered bodily injury, to wit: lung cancer." First Amended Complaint ¶ 1.15. This general allegation was asserted presumably under the assumption that plaintiff's 46 years of smoking would be considered relevant to causation. Because of the Court's ruling today, 33 of those years are no longer relevant and *plaintiff is obliged to allege that his 13 years of smoking from 1951–1964 caused his 1997 cancer.* As noted above, this Court need not accept conclusions "not 'logically compelled[.]'" *AVX Corp.*, 962 F.2d at 115 (citation omitted). Consequently, this Court concludes that causation is not properly pleaded as it now stands and grants the motion to dismiss. *See Jones*, 17 F.Supp.2d at 718 (although not specifically addressing the causation issue, dismissing under Rule 12(b)(6) claims of plaintiff who smoked from 1954–

1990 where court found "common knowledge" of health risks as of 1966). However, this Court will give plaintiff the opportunity to amend his complaint to make such an assertion if he can find a medical expert to support his position or he is willing to risk sanctions under Federal Rule of Civil Procedure 11 at a later time.[2]

Although this holding disposes, for now, of plaintiff's strict liability and negligence claims, this Court will address defendant's alternative grounds for dismissal of these claims so that it will not face these issues again should plaintiff draft a second amended complaint.

### Preemption

Defendant argues in the alternative that plaintiffs' failure to warn claims are preempted by the 1969 Act, 15 U.S.C. §§ 1331–1340. This issue was squarely addressed by the Supreme Court in *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992). In *Cipollone*, the Court held that the 1969 Act expressly preempts all common law claims that cigarette "advertising or promotions should have included additional, or more clearly stated, warnings[.]" *Id.* at 524, 112 S.Ct. 2608 (plurality opinion); *id.* at 548–549, 112 S.Ct. 2608 (Scalia, J., concurring in the judgment in part and dissenting in part).[3] The Court then applied this proposition to conclude that plaintiff's strict liability and negligent failure to warn claims were preempted by the 1969 Act. *See id.* at 524, 112 S.Ct. 2608. Since the 1969 Act took effect on July 1, 1969, *see* 15 U.S.C. § 1334 (1994) (note on effective dates), the preemptive effect only extends to claims based on conduct subsequent to that date.

Magistrate Judge Lovegreen correctly concluded that plaintiff's failure to warn claims were preempted by the 1969 Act insofar as they were based on post–1969 conduct, but did not recommend their dismissal because plaintiff asserted in his memo and at oral argument that the claims were based solely on pre–1969 conduct. *See* April 30, 1999 Report and Recommendation at 29–30 ("R & R"). Defendant argues that a finding of preemption mandates dismissal of the claims because, insofar as the failure to warn claims are based on pre–1969 conduct, plaintiff has not sufficiently alleged causation.

This Court agrees with defendant. To prevail on the non-preempted failure to warn claim, plaintiff would have to establish causation on two levels: 1) that a pre–1969 warning would have induced him to stop smoking and 2) that his pre–1969 smoking was the proximate cause of his 1997 cancer. *See Salk v. Alpine Ski Shop, Inc.*, 115 R.I. 309, 342 A.2d 622, 626 (1975). This Court has already concluded that plaintiff has not sufficiently alleged that his 1951–1964 smoking caused his 1997 cancer. Because an additional 5 years is only a fraction of plaintiff's smoking years, plaintiff has similarly not sufficiently pled the second level of causation. In addition, plaintiff has not specifically alleged the first level of causation beyond his general causation allegation quoted above. Consequently, this Court concludes that this is

---

2. To the extent plaintiff is basing his claim on the addictive nature of cigarettes, as counsel seemed to assert at oral argument, he faces similar causation problems. Although the complaint alleges defects of "excessive in nicotine delivery," First Amended Complaint ¶ 3.1.6.4, and that defendant's cigarettes are "highly likely to induce in foreseeable users a state of addiction," *id.* at ¶ 1.8, nowhere does he allege that he was addicted to defendant's cigarettes. In fact, plaintiff alleges in his conspiracy claim that he "would have quit smoking" but for the representations of defendant, *id.* at ¶ 4.9, indicating no such addic-

tion. In the face of such a claim, the "common knowledge" analysis might be different, as it has been in several other cases discussed in more depth above. However, this Court does not reach and decide this issue today.

3. Because Justice Scalia's opinion, in which Justice Thomas joined, argued for even broader preemption than did the four-Justice plurality, the plurality's preemption analysis constitutes the holding of the Court. *See King v. E.I. Dupont De Nemours and Co.*, 996 F.2d 1346, 1349 (1st Cir.1993).

an alternate ground for granting the motion to dismiss the failure to warn claims.

### Safer Feasible Alternative Design

■ Defendant argues that plaintiff's Complaint fails to state a claim of design defect, either in strict liability or negligence, because plaintiff has not alleged that a safer feasible alternative design exists for defendant's cigarettes. To succeed on this theory, defendant must establish 1) that Rhode Island law requires a plaintiff to prove a safer feasible alternative design in order to prevail on a design defect claim and 2) that therefore, plaintiff must allege the existence of a specific safer feasible alternative design at the pleading stage to withstand a 12(b)(6) motion. Because there is no compelling support for either of these propositions, this Court rejects this contention.

As noted above, a plaintiff in Rhode Island making a design defect claim must establish, in relevant part, that a defect in the product rendered the product unreasonably dangerous. *See. Crawford,* 14 F.Supp.2d at 211. Defendant argues that Rhode Island law requires proof of a safer alternative design before a factfinder can determine that a defect exists. Although practically, a plaintiff may well have to prove that a safer feasible alternative design exists to convince a factfinder that the product is "defective" in a way that would render it unreasonably dangerous,[4] there is no indication that this type of proof is required as a matter of law in Rhode Island.

The primary case that defendant relies upon for this proposition, *Jackson,* 538 A.2d at 669, simply does not establish this requirement. In that case, the plaintiff was injured when a pyramid of stacked bowls with glass lids manufactured by the defendant toppled over, causing the glass to break and a shard of glass to strike his eye. *Id.* at 667. The Rhode Island Supreme Court, in reviewing the evidence on defendant's appeal from the denial of a directed verdict, noted that

> [t]here is no evidence concerning any alternative design that would have made this pyramid safe in the circumstances in which it had been created....Most compelling, however, is the undisputed and well-known fact that cookware and glass lids will break if they fall upon a hard surface like a slate floor. It is also well known to any reasonable consumer or owner that a pyramid of dishes or cookware...may be susceptible of toppling if a lateral force is directed against it.

*Id.* at 669. Further, the Court noted that there was "no evidence that would support the proposition that a manufacturer of cookware and...glass lids could have anticipated [that the glass would be stacked in a pyramid] and guarded against it in any manner that would have been either feasible or practicable." *Id.* The Court reversed the denial of a directed verdict because it concluded that, based on this evidence, the cookware could not be considered unreasonably dangerous as a matter of law. *Id.* It is clear that the Court based its decision on the average consumer's common knowledge of the risks associated with stacking glassware. The lack of evidence of a safer feasible alternative design was only one consideration and may indeed have only been a consideration insofar as the use of the product was unforeseeable. Thus, *Jackson* does not establish that proof of a safer feasible alternative design is a prerequisite to a factual finding that a product is defectively designed and unreasonably dangerous.

Furthermore, at least one federal case applying Rhode Island law suggests that there is no such requirement. *See Austin v. Lincoln Equip. Assoc., Inc.,* 888 F.2d 934 (1st Cir.1989). In *Austin,* the plaintiff was a roofer who was injured when a power roof sweeper manufactured by the defendant bucked backward when it was

---

4. This is particularly true when the claim is based in negligence, since the focus will be on how the defendant could have acted more reasonably.

started, causing the plaintiff to fall off the roof. *Id.* at 935. The First Circuit noted that the plaintiff's expert had testified "that the use of a spring pin in the interlock mechanism between the brush and wheel clutches was a poor design. The purpose of the interlock mechanism was to ensure that the two clutches engaged simultaneously, thereby preventing the machine from moving backward[.]" *Id.* at 936. The Court then concluded that "[s]ince a sudden backward motion by the sweeper could upset a roofer's balance whether he was near the edge of a roof or not, the design and subsequent failure of the clutch interlock mechanism could reasonably be found to be a defect under Section 402A of the Restatement." *Id.* Thus, the Court affirmed the district court's denial of defendant's motions for judgment notwithstanding the verdict and a new trial. *Id.* at 939. Importantly, there is no discussion of any evidence suggesting the existence of a safer feasible alternative design for the roof sweeper. The Court's conclusion that a jury could have found the sweeper to be defective based on the evidence discussed directly contradicts defendant's contention.

The majority of states addressing the issue agree that no such requirement exists. *See Potter v. Chicago Pneumatic Tool Co.,* 241 Conn. 199, 694 A.2d 1319, 1331 n. 11 (1997)(collecting cases).

The view that a safer feasible alternative design must be proved as a matter of law to prevail on a design defect claim is set forth in the Restatement (Third) of Torts § 2(b), which states that a product is defective in design when

> the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design by the seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the alternative design renders the product not reasonably safe.

Restatement (Third) of Torts: Products Liability § 2(b)(1998). Defendant urges that Rhode Island has already adopted this section or will adopt it in the future. This Court rejects both arguments.

Specifically, defendant argues that *Buonanno v. Colmar Belting Co., Inc.,* 733 A.2d 712 (R.I.1999), a recent Rhode Island Supreme Court case, "makes clear" that Rhode Island follows section 2(b) of the Third Restatement with respect to design defect claims. Because this is a complicated factual case, further complicated by the Court's three separate opinions, an in-depth analysis is necessary to explain why defendant's argument fails.

In *Buonanno,* the plaintiff was injured when his arm was crushed in the nip point of a conveyor-belt system. *See id.* at 713. The nip point is created where the conveyor belt moves over the stationary portion of the conveyor-belt system, or the "wing pulley." *Id.* at 713 n. 1. The conveyor belt in question, of which the wing pulley was a component part, had been constructed by the plaintiff's employer. *Id.* at 714. Plaintiff brought a product liability suit on theories of strict liability and negligence against the manufacturer and the distributor of the wing pulley. *See id.* at 713–714. Both defendants made a motion for summary judgment on the ground that, as manufacturer and seller respectively of a component part, they could not be held liable for injuries caused by the final integrated product. *See id.* at 714. The trial court granted summary judgment for both defendants on this ground. *See id.* at 715. The trial court did not consider the implications of the Restatement (Third) of Torts in determining component part supplier liability. *See id.*

On appeal, the Rhode Island Supreme Court unanimously "adopted" § 5 of the Restatement (Third) of Torts. *See id.* at 716 (Goldberg, J.); *id.* at 718 (Weisberger, C.J.); *id.* at 720 (Flanders, J.). That section states that a seller or distributor of component parts

> is subject to liability for harm to persons or property caused by a product into which the component is integrated if: (a)

the component is defective in itself, as defined in this Chapter, and the defect causes the harm; or (b)(1) the seller or distributor of the component substantially participates in the integration of the component into the design of the product; and (2) the integration of the component causes the product to be defective, as defined in this Chapter; and (3) the defect in the product causes the harm.

Restatement (Third) of Torts: Products Liability § 5 (1998). Applying this rule to the facts, the Court unanimously vacated the grant of summary judgment to the distributor because it found a genuine issue of material fact as to whether the distributor "substantially participated in the integration" of the wing pulley so as to give rise to liability under the Restatement § 5(b). *See Buonanno,* 733 A.2d at 717 (Goldberg, J.); *id.* at 718 (Weisberger, C.J.); *id.* at 720 (Flanders, J.). A majority of the Court then affirmed the grant of summary judgment to the manufacturer because (1) there was no evidence to suggest that the manufacturer had participated in the integration of the conveyor belt, defeating liability under § 5(b) and (2) there was no genuine dispute that the product was not "defective in itself," defeating liability under § 5(a). *See id.* at 719 (Weisberger, C.J.).

The significance to this case of *Buonanno* comes with the latter conclusion of the majority regarding the manufacturer. Justice Goldberg argued in her lone opinion, which set forth the majority opinion regarding the distributor but the minority regarding the manufacturer, that § 2(b) of the Restatement (Third) of Torts controlled whether the part was "defective in itself" under § 5(a). *See id.* at 717. Acknowledging that the issue had not been litigated by the parties or addressed by the trial judge, she nonetheless concluded that a genuine issue of material fact existed as to whether there was a reasonable

alternative design for the wing pulley and, thus, stated that she would have vacated the grant of summary judgment to the manufacturer. *See id.* at 718. The majority rejected this view, finding that there was no genuine issue of material fact, as any inference that a reasonable alternative design existed that would have reduced or avoided the foreseeable harm to the plaintiff was purely speculative given the evidence in the record. *See id.* (Weisberger, C.J.). No other evidence that the component part was "defective in itself" was discussed. The majority did not specifically address § 2(b) of the Third Restatement, but did appear to adopt Justice Goldberg's contention that, if there was evidence of a reasonable alternative design that would have reduced the foreseeable harm to the plaintiff, the component part could have been found "defective in itself." *See id.* at 718–719.

As should be evident from this detailed description of the case, the Rhode Island Supreme Court did not "adopt" Section 2(b) of the Third Restatement, nor did it truly give an indication that it would do so when faced with the difficult question of whether it is prudent to adopt a policy foreclosing liability solely due to the absence of evidence suggesting a reasonable alternative design for a non-component product. The intense debate surrounding § 2(b), *see Potter,* 694 A.2d at 1331 (collecting sources), was not even touched on by any member of the Court in *Buonanno.* The Court itself stated that "this case stands for the proposition that the primary duty is owed by the designer of the assembled machine and not the supplier of the component parts in the absence of substantial participation in the integration of the component into the design of the product." *Buonanno,* 733 A.2d at 719. Thus, this Court will not rely on *Buonanno* to predict that the Rhode Island Court will adopt section 2(b) of the Third Restatement.[5]

---

**5.** There is another consideration relevant to this analysis which defendant has failed to

raise. If this Court were to conclude that Rhode Island follows Section 2 of the Third

Even if Rhode Island adopted such a requirement, there is no support that a safer feasible alternative design must be *pled* specifically beyond identifying a problem with the product. No Rhode Island cases applying Section 402A, including *Jackson*, address pleading requirements. Two courts in jurisdictions that require proof of a safer feasible alternative design have concluded that, at the pleading stage, it is enough to allege that something is "wrong" with the product because a logical alternative design would be to fix it. *See Kotler v. American Tobacco Co.*, 926 F.2d 1217, 1224 (1st Cir.1990)(applying Mass. law), *vacated on other grounds*, 505 U.S. 1215, 112 S.Ct. 3019, 120 L.Ed.2d 891 (1992)(concluding that plaintiff must put forth evidence of a safer feasible alternative design to survive summary judgment, but noting without comment the district court's conclusion that plaintiff had stated a design defect claim by alleging that defendant's tobacco was "bad"); *Thomas*, 11 F.Supp.2d at 853 (noting that Mississippi law requires proof of a safer feasible alternative design, but concluding that "since the plaintiff is alleging that the defendants added harmful ingredients to the tobacco, it is possible that the plaintiff can prove a feasible design alternative would be to avoid adding such ingredients."). As discussed below, plaintiff does make such allegations.

Defendant cites no cases in which a motion to dismiss was granted based on a failure to allege a safer feasible alternative design. Instead, defendant's argument seems to change course midstream. The only cases defendant cites that dismiss design defect claims on the pleadings, *Buckingham v. R.J. Reynolds Tobacco Co.*, 142 N.H. 822, 713 A.2d 381 (1998) and *Gianitsis v. American Brands, Inc.*, 685

F.Supp. 853 (D.N.H.1988)(applying N.H. law), are totally inapposite to this case. In both cases, the plaintiff was attempting to recover under the "risk/utility" theory, which provides that a product is defective if the risks associated with the product's use outweigh the social value or utility of the product. *See Buckingham*, 713 A.2d at 383; *Gianitsis*, 685 F.Supp. at 857. Thus, the risk/utility theory, unlike the consumer expectation theory, does not require a plaintiff to allege or prove that the product is defective beyond the inherent characteristics that allegedly make it unreasonably dangerous. Both Courts concluded that New Hampshire did not follow the risk/utility theory and, thus, dismissed the claims because the plaintiffs had not alleged a defect in the product beyond the inherent risks. *See Buckingham*, 713 A.2d at 384; *Gianitsis*, 685 F.Supp. at 859.

Defendant expends an enormous amount of space in its objection to the Report and Recommendation essentially arguing that Rhode Island does not follow the risk/utility test, or what it terms "categorical liability," and that therefore plaintiff's claims should be dismissed. While defendant is correct about the rule of law, *see Castrignano*, 546 A.2d at 779 (Rhode Island follows the consumer-expectation test),[6] it is incorrect about its application to this case. Although plaintiff does make some allegations that are untenable under the consumer-expectation test, *see First Amended Complaint* ¶ 3.1.3 ("the risk of danger from the design of defendant's cigarette products outweighed the benefits obtained with the use of the products"), plaintiff also makes several allegations that there is something "wrong" with defendant's cigarettes. *See id.* at ¶ 3.1.6.1 ("Insufficient reduction in tar and other carcinogens by

---

Restatement, today's holding regarding the common knowledge doctrine would be moot, as that section expressly rejects the use of the doctrine to preclude a product liability action as a matter of law. *See* Restatement (Third) of Torts: Products Liability § 2 cmt. g (1998).

**6.** The *Castrignano* Court, however, created an exception to that rule by adopting comment k to Section 402A, which employs a risk/utility analysis for "unavoidably unsafe products" such as prescription drugs, as an affirmative defense. *Castrignano*, 546 A.2d at 782. That exception is not relevant to the case at bar.

dilution and filtration"); ¶ 3.1.6.4 ("Excessive in nicotine delivery").

For the above reasons, plaintiff's pleading, to the extent it alleges a defect in defendant's cigarettes, would state a design defect claim were it not for the applicability of the common knowledge doctrine.

Furthermore, the adoption of the Third Restatement in Rhode Island would not alter the analysis. The Restatement expressly states that it "takes no position regarding the requirements of local law concerning the adequacy of pleadings or pretrial demonstrations of genuine issues of fact. It does, however, assume that the plaintiff will have the opportunity to conduct reasonable discovery so as to ascertain whether an alternative design is practical." Restatement (Third) of Torts: Products Liability § 2 cmt. f (1998). Therefore, using the same reasoning, an allegation that there is something wrong with the product would state a design defect claim under the Third Restatement because a plaintiff could eventually prove that a safer feasible alternative design would fix the problem.

This Court notes that its conclusions in this section to this point essentially adopt Magistrate Judge Lovegreen's recommendation on the issue of a safer feasible alternative design requirement. Contrary to defendant's assertions, this Court does not read Judge Lovegreen's Report as endorsing "categorical liability."

However, this Court declines to adopt Judge Lovegreen's recommendation that defendant be sanctioned for its arguments on this issue. Federal Rule of Civil Procedure 11 provides that "the claims, defenses, and other legal contentions" contained in a party's pleadings must be "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law[.]" Fed.R.Civ.P. 11(b)(2). Judge Lovegreen based his recommendation specifically on defendant's assertion that *Jackson* establishes that a plaintiff

must plead and prove a safer feasible alternative design in order to prevail on a design defect claim in Rhode Island. Although this Court agrees that *Jackson* does not establish this proposition, it declines to sanction defendant for this "aggressive" use of precedent. *See Protective Life Ins. Co. v. Dignity Viatical Settlement Partners*, 171 F.3d 52, 57 (1st Cir.1999)(reversing imposition of Rule 11 sanctions as abuse of discretion where district court based sanctions on aggressive use of precedent, even where Court agreed that party had "attempted to squeeze too much from [the] cases"). Defendant did not rely solely on *Jackson* for its argument regarding the need to plead and prove a safer feasible alternative design and this Court concludes that, given the current controversy over the theory and the Rhode Island Supreme Court's recent cursory treatment of Section 2(b) of the Restatement (Third) of Torts in *Buonanno*, the overall argument was not so frivolous as to warrant Rule 11 sanctions. *See Clancy v. Mobil Oil Corp.*, 906 F.Supp. 42, 50 (D.Mass.1995)(refusing to impose Rule 11 sanctions where party's argument was "not entirely unfounded").

### Negligent Manufacturing Claim

 Defendant argues that plaintiff's negligent manufacturing claim fails to state a claim on which relief can be granted because plaintiff fails to allege a deviation from defendant's manufacturing process. This Court agrees.

First, it is unclear to this Court why plaintiff would include a negligent manufacturing claim in this Complaint since strict liability will lie due to a manufacturing defect without, as noted above, the additional requirement that defendant knew or should have known of the defect. Nevertheless, the claim would fail regardless of the theory asserted because, in addition to the application of the common knowledge doctrine rendering the product not "unreasonably dangerous" as a result of a defect, plaintiff has failed to properly

allege a manufacturing defect. To establish a manufacturing defect, "a plaintiff must show a product defect caused by a mistake or accident in the manufacturing process." *Swajian v. General Motors Corp.*, 916 F.2d 31, 35 (1st Cir.1990)(applying Rhode Island law). *Accord Perez–Trujillo v. Volvo Car Corp.*, 137 F.3d 50, 53 (1st Cir.1998)(applying Puerto Rico law)(same requirement); *Duford v. Sears, Roebuck & Co.*, 833 F.2d 407, 410 (1st Cir.1987)(applying New Hampshire law)(same). Plaintiff has made no such allegation and has stated no facts from which such an allegation could even be inferred. Instead, plaintiff attempts to argue that a manufacturing defect can be established by a showing that defendant's product differs from the "marketplace standard." Pl.'s Objection to Defendant's Motion to Dismiss at 4. There is absolutely no support for this proposition. Furthermore, such a theory would render a manufacturing defect claim indistinguishable from a design defect claim.

Therefore, plaintiff's negligent manufacturing claim would have been dismissed on this ground alone.

### B. Conspiracy Claim

■ There has been no objection filed by plaintiff to the Magistrate Judge's recommendation that plaintiff's conspiracy claim grounded in fraud be dismissed for failure to comply with the requirements of Rule 9(b) as they are set out above. The Magistrate Judge concluded that plaintiff's "complaint alleges actual misrepresentations, reliance, and the justifiability of such reliance in such broad terms that it does not go any further than restating the elements of the claim and, therefore, does not serve its purpose of giving [defendant] the notice it is entitled to in order to answer a claim of fraud." R & R at 8. Since this Court, upon review, thoroughly agrees with the Magistrate Judge's reasoning and conclusion, it will not belabor the point by conducting its own analysis.

The objection filed is by defendant to the Magistrate Judge's recommendation that plaintiff be allowed time to amend his complaint to attempt to comply with Rule 9(b). Defendant argues that, since this is plaintiff's second attempt at drafting a viable complaint and since plaintiff's counsel "admitted" that the complaint could not be improved, *see* Deft's Objection to R & R at 42, dismissal of the conspiracy claim should be with prejudice. However, the dismissal of plaintiff's original complaint was for a violation of Rule 8 and, thus, plaintiff was not on notice that the complaint failed to satisfy the particularity requirements of Rule 9(b). *Cf. Hayduk*, 775 F.2d at 445 (dismissal with prejudice of fraud counts after plaintiffs had two opportunities to amend their complaint was well within the discretion of the district court particularly where the plaintiffs were notified before amending a second time that the allegations of fraud in their first amended complaint failed to meet the particularity requirements of Rule 9(b)). Furthermore, although plaintiff's counsel did indicate at the hearing before the Magistrate Judge that "[w]e've done our best," March 3, 1999 Arg. Tr. at 44, he represented at the hearing before this Court that "we'll try. We'll do it again." July 26, 1999 Arg. Tr. at 30. Since federal courts should be liberal in allowing amendments, *see Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); Fed. R.Civ.P. 15(a), this Court will adopt the Magistrate Judge's recommendation and will grant plaintiff a chance to amend the complaint consistent with this opinion.

■ The Court notes, however, that Rule 9(b) will not be plaintiff's only obstacle in attempting to replead. Even if plaintiff properly avers a fraud claim with particularity, that claim will fail as a matter of law to the extent plaintiff relies upon misrepresentations made after 1964 regarding the general health risks of smoking, including the risk of contracting cancer. In Rhode Island, reliance on alleged misrepresentations must be justifiable to

establish a viable fraud claim. *See Kelly v. Tillotson–Pearson, Inc.*, 840 F.Supp. 935, 940 (D.R.I.1994); *Travers v. Spidell*, 682 A.2d 471, 473 (R.I.1996)(per curiam). In view of this ruling regarding the public's common knowledge of the general health risks of smoking since 1964, plaintiff cannot as a matter of law plead justifiable reliance on representations made by defendant after that date which conflict with such knowledge. *See, e.g., Smith*, 599 A.2d at 321 ("no reasonable person could have relied on any alleged representation in media advertising that driving while intoxicated is safe or acceptable"); *Gawloski v. Miller Brewing Co.*, 96 Ohio App.3d 160, 644 N.E.2d 731, 736 (1994)("a reasonable consumer could not, as a matter of law, ignore basic common knowledge about the dangers of alcohol and justifiably rely upon beer advertisements and their idyllic images to conclude that the prolonged and excessive use of alcohol is safe and acceptable").[7]

## IV. *Conclusion*

For the preceding reasons, defendant's motion to dismiss is granted as to all claims. However, plaintiff is granted leave to file a second amended complaint which is consistent with this opinion, within thirty (30) days from the date hereof.

It is so ordered.

---

**7.** In *Jones*, 17 F.Supp.2d at 720–721, the Court applied the common knowledge doctrine to bar strict liability and negligence claims based on cigarettes, but allowed a common law fraud claim to go forward. In discussing the justifiability of reliance on alleged misrepresentations, the Court distinguished *Gawloski* by noting that plaintiff's claim was based on misrepresentations regarding defendant's manipulation of nicotine levels in the cigarettes rather than just misrepresentations regarding the well-known dangers of the product alone. *Id.* at 721. Since there is no such allegation in this case and plaintiff's fraud claim appears to be based only on alleged misrepresentations regarding the general health risks of smoking, *Gawloski*'s reasoning can be borrowed here to preclude an allegation of justifiable reliance.